Jane DOE, Plaintiff,

v.

CITY OF CHULA VISTA,
et al., Defendant.

No. CIV.98–0972–E–CGA.

United States District Court,
S.D. California.

Sept. 29, 1999.

George John Ronis, Law Offices of George J. Ronis, Chula Vista, CA, for plaintiff.

Phillip L. Kossy, Littler Mendelson, San Diego, CA, for defendants.

### MEMORANDUM DECISION AND ORDER

ENRIGHT, District Judge.

### BACKGROUND

Former Assistant City Attorney Jane Doe filed this employment discrimination action against the City of Chula Vista and John Kaheny (the City Attorney). The suit arises from an incident in which Doe informed Kaheny that she was involved in a verbal altercation with an opponent at a court hearing. Subsequent to that discussion, Kaheny requested that Doe agree to a psychiatric examination. When Doe refused, she was terminated.

Doe has twice amended her complaint. Earlier versions of the complaint included claims for defamation and for actual disability under the Americans with Disabilities Act (ADA). Doe eliminated those claims from her suit. Her second amended complaint contains six causes of action, including an ADA claim for discrimination on the basis of a perceived, not an actual, disability. Doe alleges that the City engages in unlawful employment practices, including making un-

lawful medical inquiries. SAC ¶ 16. She alleges that these violations have directly and proximately caused her to suffer damages in the form of severe emotional distress. SAC ¶ 17. Doe makes similar allegations in her state law Fair Employment claim and wrongful termination claim. SAC ¶¶ 24, 35. Doe further alleges that her confidential medical records were disclosed to others, including a potential employer, without her consent and in violation of her right to privacy. Based on the unlawful "dissemination of sensitive confidential personal medical information," Doe pleads a claim under California Constitution's privacy clause.

The parties dispute whether Doe waived her psychotherapist-patient privilege in light of the allegations in her complaint. The dispute arose when defendants initiated discovery requests concerning Doe's health care providers and her medical records. Interrogatory Number 4 requested that Doe identify "each and every health care provider which has provided any service to you for any purpose" in the last ten years. Defendants further requested documents pertaining to "each and every mental and psychological disorder" Doe had and for which she sought treatment in the last ten years.

In addition to these direct discovery requests, defendants accessed information in Doe's employee personnel file, without Doe's consent, to find the names of her doctors. Defendants then sent subpoenas requesting all documents, test results, reports, or notes "which in any way pertains to" Doe. One result of this subpoena was that defendants obtained the medical records surrounding the birth of Doe's child.

Doe presented the discovery dispute to the magistrate judge for resolution. Defendants argued that they were entitled to explore the truth of Doe's allegation that she suffered severe emotional distress as a result of defendants' conduct, and whether Doe suffered from any pre-existing distress. Defendants argued that Doe waived the psychotherapist-patient privilege by placing her psychological condition in controversy. In opposition, Doe argued that she had not placed her emotional condition at issue merely by seeking damages for emotional distress. She limited her emotional distress damages to that "generic" harm suffered by one asked to submit to a psychiatric evaluation to keep a job. She asserts that her purpose in this lawsuit is to vindicate the rights of employees to maintain their privacy in their psychological history, but it would be defeated if the lawsuit triggered a broad inquiry into her medical records.

The magistrate judge held that Doe's medical records are protected by the psychotherapist-patient privilege that exists under federal common law by virtue of the Supreme Court's decision in *Jaffee v. Redmond,* 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). The magistrate next turned to the question of whether Doe had waived her privilege. After reviewing two lines of cases on waiver, the magistrate found the narrow view most convincing, and held that a plaintiff did not waive the privilege simply by seeking emotional distress *damages.* Rather, a plaintiff would have to herself *introduce the substance of the communications* into evidence or call the therapist as an *expert witness.* The magistrate concluded that this narrow view of waiver effected the policy goal of the privilege by ensuring that the patient knew *at the time of therapy* that her discussions would remain private. It accommodated the Supreme Court's concern that conversation with one's therapist "would surely be chilled, particularly when it is obvious that the circumstances that give rise to the need for treatment will probably result in litigation." *Jaffee,* 116 S.Ct. at 1929. The magistrate reasoned that "[i]t is clear from this passage that the *Jaffee* court envisioned that the privilege would protect from disclosure confidential psychotherapist-patient communications *even if* the patient placed his mental or emotional condition at issue in litigation." Magistrate's Order at 631 (emphasis added). Otherwise, defendants would be permitted to go on a "fishing expedition" in an attempt to discover whether there might be some psychological trauma or other event in plaintiff's past to which they can attribute some or all of her claimed emotional distress. *Id.* Doe claimed to have suffered the mental anguish of an ordinary per-

son in similar circumstances, and that is a matter within the everyday experience of the average juror. *Id.* at 632. Nonetheless, the magistrate allowed defendants to discover the names of all health care providers for a one-year time frame, and to inquire into Doe's past to discover if her emotional distress was caused at least in part by events and circumstances that were not related to her termination.

As a corollary issue, the magistrate concluded that defendants had violated the California Confidentiality of Medical Information Act when the clients gave Doe's personnel file, with medical information, to the defense attorneys. That Act prevents an employer from using or disclosing medical information in its possession relating to its employees "without the patient having first signed an authorization" *except* "that part of the information which is relevant in a lawsuit ... in which the patient has placed in issue his or her medical history, mental or physical condition, or treatment." Cal. Civil Code § 56.20. Because the magistrate concluded that Doe had not placed her mental condition at issue in her lawsuit by seeking emotional distress damages, she found that defendants had violated this statute. To remedy that violation, she ordered defense counsel to return the medical file and not to use any information from that personnel file in this lawsuit. Magistrate's Order at 635.

Defendants object to the magistrate's order. They ask the court to consider whether the broad view of waiver should apply, such that Doe waived her privilege by seeking emotional distress damages. They further contend that the magistrate erred by restricting the discovery into Doe's medical providers for the short time frame of one year. Defendants also object to the finding that they violated the California statute as measured by the time of the disclosure. Finally, they contend the magistrate exceeded her authority by ordering the defense counsel to return the personnel file as it amounts to an injunction.

### DISCUSSION

Rule 72(a) allows a party dissatisfied by a magistrate judge's ruling to file objections for review by the district judge assigned to the case. Fed.R.Civ.P. 72(a). The district court reviews the magistrate's ruling to determine if it is "clearly erroneous" or "contrary to law." *Id.;* 28 U.S.C. § 636(b)(1)(A). "Review under the clearly erroneous standard is significantly deferential, requiring a 'definite and firm conviction that a mistake has been committed.'" *Concrete Pipe & Prods. v. Construction Laborers Pension Trust,* 508 U.S. 602, 623, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993); *Security Farms v. International Broth. of Teamsters,* 124 F.3d 999, 1014 (9th Cir.1997). Rulings on the scope of federal common law privileges, however, are reviewed de novo. *See Clarke v. American Commerce Nat'l Bank,* 974 F.2d 127, 129 (9th Cir.1992).

### I. WAIVER OF PSYCHOTHERAPIST-PATIENT PRIVILEGE

#### A. The Privilege as Defined by the United States Supreme Court

##### 1. Jaffee v. Redmond

The federal privilege was first recognized by the Supreme Court in *Jaffee* in June 1996. Fed. Evid. R. 501. The Court noted that unlike a medical doctor who can rely on objective information, "[e]ffective psychotherapy ... depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears." *Jaffee,* 116 S.Ct. at 1928. "Because of the sensitive nature of the problems for which individuals consult psychotherapists, disclosure of confidential communications made during counseling sessions may cause embarrassment or disgrace." *Id.* The psychiatrist's ability to help the patient is "completely dependent upon the patients' willingness and ability to talk freely." *Id.* (quotations and alterations omitted).

The Court also concluded that the privilege served a public interest because it facilitates "the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem. The mental health of our citizenry, no less than its physical health, is a public good of transcendent importance." *Id.* at 1929 (footnote omitted). By contrast,

"[i]f the privilege were rejected, confidential conversations between psychotherapists and their patients would surely be chilled, particularly when it is obvious that the circumstances that give rise to the need for treatment will probably result in litigation." *Id.*

In recognizing the privilege, the Supreme Court expressly rejected the approach in which a court "balanced" the evidentiary need for the communications against the patient's privacy concerns. *Id.* at 1926–27, 1932. The Court reasoned that "[m]aking the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege." *Id.* at 1932. In other words, "if the purpose of the privilege is to be served, the participants in the confidential conversation 'must be able to predict with some degree of certainty whether particular discussions will be protected.'" *Id.* The Court was concerned that "the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment." *Id.* at 1928 (footnote omitted).

The Court determined that it would be premature to delineate the "full contours" of the privilege and preferred to leave the details of the new privilege to a case-by-cases basis. *Id.* at 1932. In a footnote, however, the Court noted that "the patient may of course waive the protection" of the privilege. *Id.* at 1931 n. 14.

### 2. *Proposed Supreme Court Standard*

The Supreme Court had submitted a proposed Rule of Evidence on the psychotherapist-patient privilege to Congress. Although Congress *declined* to adopt the rule, the language of the proposed rule illuminates the Supreme Court's vision of the parameters of the privilege and the instances in which the privilege would be waived. The general rule of privilege was the same announced in *Jaf-*

*fee,* that is, the patient has the privilege to refuse to disclose "confidential communications, made for the purpose of diagnosis or treatment of his mental or emotional condition." Proposed Supreme Court Standard 504(b). The Court proposed exceptions to the privilege for conditions included in an element of a claim or defense. Specifically, "[t]here is no privilege under this rule as to communications relevant to an issue of the mental or emotional condition of the patient in any proceeding in which he relies upon the condition as an element of his claim or defense." *Id.* 504(d)(3).

### B. *Split Authority on Waiver of Privilege*

The courts are divided on the circumstances in which a patient waives her privilege by bringing a law suit. Both lines of cases attempt to honor the policy concerns expressed in *Jaffee*. All courts agree that a patient who sues the therapist for malpractice waives the privilege. The cases discussed below grapple with the more difficult question of how a plaintiff may waive the privilege by placing her mental condition in issue. The Ninth Circuit has not yet addressed the federal common law's rule of waiver. The magistrate adopted the narrow or conservative view of waiver and Doe agrees with that line of cases, but defendants favor the broad view.

### 1. *Defendants' Argument: Broad View of Waiver*

Some courts have held that a plaintiff waives her psychotherapist privilege by alleging in her complaint that she suffered "emotional distress" from the defendant's conduct and by seeking monetary damages for that psychological injury. The *Sarko* decision is the leading authority for this view. In *Sarko v. Penn–Del Directory Co.,* 170 F.R.D. 127 (E.D.Penn.1997), the plaintiff brought an ADA claim.[1] Plaintiff alleged

---

1. Doe originally included an ADA claim for actual disability. She has, however, dismissed that claim to prevent discovery into her medical and psychological condition. The facts of *Sarko* do not control the outcome of Doe's case because Doe is relying on the theory of "perceived" dis-

ability in her ADA claim. In *Sarko,* plaintiff claimed her employer should have made reasonable accommodations for her *actual* disability. By contrast, Doe does not allege that she suffers from a mental illness. Her claim is that because her employer thought she had a mental disabili-

that her employer violated the ADA by failing to accommodate her tardiness because her difficulty in waking up was a side effect of the medication that she took for depression. Defendant asked plaintiff to disclose the records of her psychiatrist.

The *Sarko* court found that plaintiff had waived her privilege to those medical records by directly placing her medical condition at issue in the law suit. Plaintiff had placed her depression directly in issue by alleging that she was protected by the ADA. "Plaintiff must therefore authorize release of all records that contain confidential communications with her psychiatrist that are relevant to her mental condition during the time she was in Defendant's employ." *Id.* at 130.

The *Sarko* court gave three reasons for this conclusion. First, the court noted that other district court opinions decided before *Jaffee* had held that the litigant may waive the privilege by raising the issue of her psychological state.

Second, the privilege was analogous to that provided for attorneys and their clients. A client could waive the attorney-client privilege if the advice of counsel is placed at issue in the litigation.

Third, it would not be fair or just to let the plaintiff hide behind a privilege when she had placed her emotional condition directly at issue. A later district court opinion discussed the fairness concern more specifically. *Santelli v. Electro–Motive*, 188 F.R.D. 306 (N.D.Ill.1999). A narrow view of waiver would enable the patient to offer at trial the testimony of a *non-treating* psychological expert, and to prevent inquiry into what she had actually told her treating psychologist. This would allow the patient to provide the expert witness with a selective history, but would prevent the opponent from testing the veracity of that history by comparing it to what was actually reported to her treating psychotherapist. This result is unacceptable because it would allow the privilege holder to

thwart the truth seeking process by using the privilege as both a shield and a sword. "A party cannot inject his or her psychological treatment, conditions, or symptoms into a case and expect to be able to prevent discovery of information relevant to those issues." *Id.* at 309.

The *Santelli* decision went on to state that the broad view provided a level of predictability to the privilege. Predictability at the time the patient consulted the psychotherapist was an important policy concern to the Supreme Court in *Jaffee*. The *Santelli* decision found the necessary predictability in the bright line rule that a patient waives the privilege by asserting a claim for emotional distress damages in a complaint because "[p]arties would know for certain that if they want to maintain the privilege, they cannot seek emotional distress damages." *Id.* at 308.

Defendants argue that the court should adopt *Sarko's* view as the governing rule, and that applying this broad rule to the facts, the court should reverse the magistrate's ruling. This rule protects the due process rights of defendants by enabling them to explore issues of causation and apportionment of the damages that Doe seeks. Doe may have suffered distress from a prior event that actually produced the distress she claims was caused by the termination. Defendants are entitled to explore the truth of her allegation that the termination caused her psychological distress. The broad rule does not engage in the impermissible balancing test, rather, it establishes a bright line rule that a patient who relies on her emotional condition as an element of her claim may not assert the psychotherapist-patient privilege to preclude a defendant from obtaining discovery of her mental health records. It is the patient who decides whether to file a lawsuit claiming emotional distress damages, and she has the

ty, he violated the ADA by inquiring into her mental health and demanding that she take a psychiatric examination as a condition of keeping her job. While the facts of *Sarko* are not controlling, the reasons the court gave for adopting the broad rule of waiver do apply to Doe's case. Another district court used *Sarko's* logic to

hold that a plaintiff who brought a sexual harassment suit against her employer had waived the privilege by seeking emotional distress damages in connection with that cause of action. *Vann v. Lone Star Steakhouse & Saloon of Springfield, Inc.*, 967 F.Supp. 346 (C.D.Ill.1997).

control over the scope of the litigation, and consequently, the scope of her privilege.

### 2. *Plaintiff's Argument: Narrow View of Waiver*

The narrow view is that the psychotherapist-patient privilege is waived only when the plaintiff introduces the communications themselves as evidence. The preeminent decision articulating the narrow view of waiver is *Vanderbilt v. Town of Chilmark*, 174 F.R.D. 225 (D.Mass.1997). There, plaintiff brought a gender discrimination complaint against her employer. Plaintiff sought damages for emotional distress in six causes of action. Defendants sought discovery relating to plaintiff's psychotherapy. The *Vanderbilt* court found that the simple inclusion of a request for emotional distress damages did not waive the privilege.[2]

The *Vanderbilt* court rejected the three reasons that the *Sarko* court had given to adopt the broad view of waiver. First, the decisions that had found waiver when the patient sought emotional distress damages were issued before *Jaffee* and thus those courts did not have benefit of the Supreme Court's ruling that the need for the evidence should not be "balanced" against the patient's privacy interest. The *Vanderbilt* court reasoned that the Supreme Court's rejection of that balancing test "drastically change[d] the waiver formula." *Id.* at 229. In the case where the patient seeks emotional distress damages, all she has done is make her communications with her therapist "potentially relevant." "That evidence may be harmful, or helpful, to her case." *Id.* "After *Jaffee*, a court cannot force disclosure of that evidence solely because it may be extremely useful to the finder of fact." *Id.* "Giving weight to the usefulness of the evidence as a factor in a decision regarding the scope of the privilege would be a balancing exercise that was barred by *Jaffee*." The *Vanderbilt* court criticized *Sarko* as eliminating the certainty of confidentiality that the Supreme Court wished to protect. Under *Sarko's* broad rule, "a patient would not know with

certainty, at the time of her psychotherapy, whether the communication would be privileged at a later date. This uncertainty could 'eviscerate the effectiveness of the privilege.'" *Id.* (quoting *Jaffee*, 116 S.Ct. at 1932).

Second, the *Sarko* court had relied on the analogy to attorney-client privilege. As the attorney-client privilege is waived if the client puts the attorney's "advice" at issue, then the patient's privilege is waived if she puts her "mental condition at issue." The *Vanderbilt* court agreed with the concept of using the analogy, but disagreed with the result. The client undoubtedly waives the attorney-client privilege by using the *substance* of the communications to further her own cause, for example, using the attorney's advice as a defense. But she does not waive it by seeking attorney's fees from the opponent at the conclusion of the lawsuit. By analogy, a patient would waive the privilege "if the communication between a psychotherapist and a patient is, itself, put at issue by the patient." *Id.* For example, "[a] patient whose cause of action relies on the advice or findings of her psychotherapist cannot claim the privilege." *Id.* But a plaintiff who seeks emotional distress damages is more akin to the client who seeks attorney's fees from the opponent. "The fact that a privileged communication has taken place may be relevant. But the fact that a communication has taken place does not necessarily put its content at issue." *Id.*

Third, the *Sarko* court relied on a fairness factor in that a privilege should not be used as a shield and a sword at the same time. The *Vanderbilt* discerned no unfairness in allowing the plaintiff to assert the privilege when she merely sought emotional distress damages because she had not first used the privilege as a sword to introduce evidence of the "substance of her conversations with the psychotherapist in order to further her claim of emotional damage." *Id.* at 230.

---

**2.** The court noted that defendant would be allowed to discover the dates of treatment, because the *fact* that a privileged communication took place is not privileged. For example, defendant could use evidence that plaintiff had sought psychiatric treatment *before* the dates of the defendant's misconduct in order to suggest that plaintiff had a pre-existing emotional injury.

Doe supports the application of this narrow view and asks the court to affirm the magistrate's ruling. She argues that her request for emotional distress damages is limited to that specifically caused by being forced to choose between losing her job or allowing her privacy to be invaded; the realization that the City could ruin her reputation in the legal community; and the loss that an reasonable person feels when they are wrongfully forced to break their ties with their co-workers. These allegations do not place her mental condition at issue.[3] More importantly, they do not put the substance of communications between Doe and her psychotherapists at issue. The magistrate's ruling fully enforces the policy of *Jaffee.* The Supreme Court emphasized that the patient must be able to predict that her communications will be confidential at the time she seeks therapy in order for the therapy to be effective.

## C. *Analysis*

The court reviews this question of law under a de novo standard of review. The court concludes that the Supreme Court would adopt the broad view of waiver. The court finds it significant that the Supreme Court specifically included an exception in its proposed standard that the privilege does not protect communications concerning a plaintiff's emotional condition *if the patient relies upon the condition as an element of her claim.* Supreme Court Standard 504(d)(3). The court concludes that a plaintiff who seeks to recover for emotional distress damages is relying on her emotional condition as an element of her claim.[4]

An employee who brings a discrimination lawsuit may allege a variety of different types of damages. For example, she may seek back wages, including lost fringe benefits such as commissions, vacation pay, pension benefits, sick pay, cost of living increases, bonuses, stock options, and medical and life insurance; front pay for the lost pay expectations in the future; mitigation expenses, such as travel expenses to obtain interim employment; injunctive relief, such as reinstatement, proscriptive relief to correct any improper practices, corrective relief to assure that the new practices are fair; punitive damages for egregious misconduct; and prejudgment interest. The employee may also seek to recover non-economic damages to compensate her for any emotional distress, mental anguish, pain, suffering, or harm to her reputation that was caused by the employer's misconduct. For each item of damages, whether economic or non-economic, the plaintiff must show that the damage was proximately caused by the defendant's unlawful conduct. In turn, the employer is entitled to show that other factors contributed to the plaintiff's damage. *See, e.g., Vance v. Southern Bell Tel. and Tel. Co.,* 863 F.2d 1503, 1516 (11th Cir.1989) (district court reduced jury's monetary award for emotional harm caused by racial discrimination because "there were many other unpleasant factors in her life which almost certainly contributed to her emotional distress"); *Hamilton v. Rodgers,* 791 F.2d 439, 444–45 & n. 3 (5th Cir. 1986) (allowing compensatory damages when plaintiff endured for emotional injury from his work environment, but reversing award attributed to plaintiff's physical decline because "insufficient certainty as to causation exists" as his health had been failing due to his smoking, diet, and family history of hypertension). As the Fifth Circuit stated, "[i]t was plaintiff's burden to prove that the harassment proximately caused the ultimate condition," and the "law recognizes no 'could have been a factor' standard of causation." *Hamilton,* 791 F.2d at 444 & n. 3.

In this case, Doe has elected to recover damages for severe emotional distress in connection with her statutory and tort claims. SAC ¶ 17, 19 (by incorporation), 24,

---

**3.** The court agrees with defendants' observations that these limitations are *not* actually set forth in the operative pleading.

**4.** The court's conclusion is strengthened by the existence of a similar privilege, exception, and interpretation of the California statute. California recognizes the psychotherapist-patient privilege, Cal. Evid.Code § 1010, and a patient-litigation exception, § 1016. The California Supreme Court held that a patient seeking severe emotional distress damages has waived the privilege. *In re Lifschutz,* 2 Cal.3d 415, 432–37, 85 Cal.Rptr. 829, 467 P.2d 557 (1970).

31, 35. Specifically, she claims $1,000,000 damage to her emotional health. SAC, Prayer for Relief, ¶ E. To recover such damages, Doe must prove that her employer's conduct proximately caused her specific injury. *Hamilton,* 791 F.2d at 444 & n. 3. Thus, her emotional health, near the time of the defendants' alleged misconduct, is an issue in the litigation. Doe elected to seek monetary relief from the defendants to compensate her for "emotional pain, suffering, loss of self esteem, and mental anguish"; consequently, Doe is relying on her emotional state to make her case. *See Vance,* 863 F.2d at 1516; *Hamilton,* 791 F.2d at 444–45. Doe can testify to her emotions near the incident, and defendant is free to cross examine her about the depth of her emotional damage and other factors in her life at that time. But to insure a fair trial, particularly on the element of causation, the court concludes that defendants should have access to evidence that Doe's emotional state was caused by something else. Defendants must be free to test the truth of Doe's contention that she is emotionally upset *because of* the defendants' conduct. Once Doe has elected to seek such damages, she cannot fairly prevent discovery into evidence relating to the element of her claim.

The court's decision is based primarily on its concern that the discovery process be *fair to both parties,* so that each side is able to present an effective and complete case to the jury. The rule adopted by this court does not operate to "balance" the patient's privacy interest against the defendant's need for the information. Rather, it recognizes that *if* the patient desires the jury to compensate her for damage to her emotional condition, then defendant is entitled to explore the circumstances caused that injury. Nor does the rule adopted by this court let the "usefulness" of the information control the "scope" of the privilege. The court recognizes that Doe has a privilege to keep confidential all of her conversations with her therapist; instead, the court holds that Doe *waived* that privilege by seeking compensatory damages for injuries to her emotional health. The court is particularly persuaded by the discussion of fairness and predictability in the *Santelli* decision.

In reaching this conclusion, the court acknowledges that there is some support for the narrow view in the Supreme Court's *Jaffee* decision. The Supreme Court expressed concern that communications with one's therapist could be chilled "particularly when it is obvious that the circumstances that give rise to the need for treatment will probably result in litigation." *Jaffee,* 116 S.Ct. at 1929. This quote suggests that the Supreme Court did not want to prevent a person who had been emotionally damaged by the misconduct of another person from obtaining effective counseling. Effective counseling requires that the patient know that the therapist will not reveal the patient's thoughts, concerns, and feelings.

Nonetheless, the Supreme Court did include an exception to its proposed rule that the privilege would be waived if the patient relies on "the condition as an element of his claim" in the litigation. These two statements may be harmonized by recognizing that the plaintiff has the choice to keep his communications with his therapist private by controlling the particular relief sought in the litigation. For example, the employee may seek injunctive relief and back pay without seeking mental anguish damages. As discussed in the *Santelli* decision, this may diminish the possibility that the jury will compensate the patient for the full harm inflicted by the wrongdoer. The choice, however, is the patient's to make. It may be a difficult choice for a plaintiff, but it does allow the patient to protect the communications with the therapist. Conversely, it fairly allows the employer to test the truth of the patient's claim that the employer caused her mental suffering in those instances when the patient attributes her emotional pain to her employer's conduct.[5]

Having said this, the court does not suggest the scope of discovery is unlimited. For example, one district court found that plaintiff had waived the psychotherapist-patient privilege by seeking emotional distress dam-

---

5. Justice Tobriner eloquently stated this analysis in considering the California state law privilege.

*In re Lifschutz,* 2 Cal.3d at 432–37, 85 Cal.Rptr. 829, 467 P.2d 557.

ages in her employment discrimination suit after she had been sexually assaulted at work. *Vasconcellos v. Cybex Int'l, Inc.*, 962 F.Supp. 701 (D.Md.1997). Nonetheless, the district court narrowed the scope of discovery. The court acknowledged that plaintiff had raised serious concerns that the disclosures would adversely affect her treatment by destroying the confidentiality of her relationship with her therapist. In light of the policy concerns behind the privilege, the court found that plaintiff had "a right to have discovery *limited to information that is directly relevant to the lawsuit.*" *Id.* at 709 (emphasis added). The court would prevent defendants from conducting a "fishing expedition," and would limit the scope of inquiry to whether, and to what extent, the alleged misconduct caused plaintiff to suffer emotional harm. *Id.*

This court agrees that the scope of discovery into this sensitive area should be limited and confined to that information that is essential to a fair trial. Absent some extraordinary showing, for example, defendants have no need to access records relating to the birth of Doe's child. The magistrate correctly concluded that the interrogatories and subpoenas as originally framed by the defendants were over broad. Doe's claim for emotional distress damages does not entitle defendants to invade the whole of Doe's medical history.

To date, the parties have taken an "all or nothing" approach to this discovery dispute. Plaintiff contends that none of the medical records are discoverable, while defendants contend that all are. These black and white positions do not advance the resolution of the lawsuit. The court expects the parties to find a middle ground so that the discovery requests to Doe's medical providers will be narrowly tailored to the particular area of her emotional health. For example, the parties should attempt to agree on which medical providers and which medical records may be relevant to Doe's emotional condition. Upon remand, the magistrate judge may wish to direct the parties to confer on a

mutually acceptable solution in light of this court's order.

In any event, the court concludes that the magistrate should act as a gatekeeper of any and all evidence relating to Doe's medical history. The parties should first narrow their requests so as not to burden the magistrate with voluminous medical records. The court concludes that any such medical records should be submitted *in the first instance to the magistrate judge under seal for in camera review.* The magistrate may review the materials to determine if, and to what extent, the evidence is relevant to Doe's claim for emotional distress damages. Upon completing the *in camera* screening, the magistrate may then release the discovery to the parties.

The magistrate, with the assistance of the parties, shall place an appropriate protective order on the materials to preserve the confidentiality of the medical information. These restrictions should ensure that Doe's privacy interests are not unduly burdened by the litigation she brought to vindicate her legal rights. The court is confident that the magistrate can oversee the details of the discovery process to ensure that both parties are fully and fairly prepared to litigate this lawsuit. The magistrate is free to impose any other reasonable restrictions on the discovery process to implement the court's order.

Additionally, the court agrees with the magistrate that a time limit is appropriate. The one year time limit, however, is too restrictive considering the evidence that Doe received counseling in 1994.[6] The court concludes that the discovery should extend to include 1994.

## II. *DISCLOSURE OF FRITSCH'S PERSONNEL FILE TO DEFENSE COUNSEL*

■ The magistrate found that the City had violated the statute governing the confidentiality of an employee's medical records at work when defendants gave her personnel

---

**6.** As discussed below, the court concludes that defendants properly relied on the litigation exception to the confidentiality statute to find the

information concerning this 1994 treatment in Doe's personnel file.

file to their attorneys. Defendants argue that they did not violate the statute because *at the time the City made the disclosure,* Doe had claims in her complaint for defamation and ADA disability discrimination.

The court agrees with this analysis.[7] Even under the narrow view of the waiver of privilege, Doe had placed her emotional condition "at issue" in the case in her defamation claim. More precisely, the defendants would have been entitled to discover the doctor's diagnosis to prove their affirmative defense that they had truthfully stated Doe's emotional condition. At the time of the disclosure, therefore, defendants were entitled to obtain the work file, without Doe's consent, to defend that litigation. Cal. Civil Code § 56.20. As defendants correctly note, the magistrate's ruling operates to punish them retroactively for their conduct, based on the magistrate's view of the psychotherapist-patient privilege. Even if the narrow view of waiver controlled the emotional distress damages issues, it does not diminish the defendants' then-existing right to use the medical records for the defamation and ADA causes of action. When the facts are evaluated from that point in time, the transfer of the medical file was permitted under the statute.[8]

## CONCLUSION

Upon due consideration of the parties' memoranda and exhibits, the arguments advanced at hearing, and for the reasons set forth above, the court hereby grants defendants' motion to modify portions of the magistrate judge's July 14, 1999 Opinion and Order [# 79]. The court refers the matter to Magistrate Judge Aaron for further proceedings consistent with this order.

---

7. The court rejects Doe's argument that defendants lack standing to raise this issue because the individual who propounded that specific interrogatory is no longer a defendant. The interests of the various co-defendants are the same and they are represented by the same counsel. Doe's argument elevates form over substance. If successful, her argument would require the remaining defendants to repeat the discovery request in their name, the magistrate would apply her ruling to that request, and this court would have another hearing on the same issue. The court discerns no reason to further delay the resolution of the parties' discovery disputes.

8. The court rejects defendants' imaginative argument that the magistrate exceeded her authority when she remedied the perceived discovery violation by ordering defendants to return Doe's personnel file to her attorney. The magistrate issued that order in the context of a discovery dispute. The magistrate was not presented with a motion for an injunction. Fed.R.Civ.P. 65. Under defendants' broad view of an injunction, the magistrate would never be able to order the party to do a multitude of tasks, such as submit letter briefs or bring a representative with authority to settle the case to a settlement conference. The Federal Rules give the magistrate the power to issue protective orders to prevent the harassment or embarrassment of any party; to limit discovery to certain issues; and to forbid the disclosure of confidential information. Fed. R.Civ.P. 26(c); *see* 28 U.S.C. § 636(b)(1)(A) (a magistrate may hear and determine any pretrial matter); Local Rule 72.1(b) ("a magistrate judge shall hear and determine any pretrial motions, including discovery motions"). The magistrate's order fell well within her discretion to manage the discovery process.