An order consistent with this opinion shall follow.

Marie N. JACKSON, Plaintiff,

v.

**CHUBB CORPORATION, et al., Defendants.**

No. Civ.A. 98–4361 (GEB).

United States District Court, D. New Jersey.

March 28, 2000.

46. As well as, information regarding the whereabouts and the handling of the same.

Jerry V. Leaphart, Jerry V. Leaphart & Associates, Red Bank, NJ, for plaintiff.

Joel L. Finger, Roberts & Finger, Parsippany, NJ, Christine A. Amalfe, Gibbons, Del Deo, Dolan, Griffinger & Vecchione, P.C., Newark, NJ, for defendants.

## MEMORANDUM

WOLFSON, United States Magistrate Judge.

Presently before the Court is a motion by plaintiff Marie N. Jackson seeking a protective order preventing discovery of her current and ongoing mental health records as well as the identity of her current mental health care provider, pursuant to FED. R.CIV.P. 26(c). The Court has reviewed the moving, opposition, and reply papers, and heard argument on the matter on March 6, 2000. For the following reasons, plaintiff's motion for a protective order is denied.

### Background

The present motion stems from a complaint filed by plaintiff on September 15, 1998, primarily alleging that her previous employer and numerous individual defendants discriminated against her on the basis of race. *See Plaintiff's Complaint filed September 15, 1998.* Since that time, there has been a flurry of activity by both sides in the way of discovery, motions (both dispositive and nondispositive), and conferences with this Court. Most recently, this Court granted plaintiff's motion to file a third amended complaint, after defendants posed no objections.

On February 16, 2000, plaintiff filed this motion for a protective order to prevent the discovery of her current and ongoing mental health records,[1] including the identity of her current mental health care provider. While plaintiff acknowledges that her mental condition has been placed at issue by virtue of the legal claims in her complaint,[2] she nonetheless maintains that protection of her current records is necessary and crucial if she is to benefit from her ongoing mental health treatment. *See Plaintiff's Brief in Support of Motion* at 3–5. Specifically, plaintiff contends that she is in critical need of mental health treatment, having been diagnosed as "seriously depressed, with symptoms including, but not limited to, that of hallucinations." *Id.* at 6–7. As such, plaintiff argues that "it is difficult to envision any circumstance that falls more directly into the precise meaning and intent of Rule 26(c) than the need to protect the ability to receive needed mental health treatment[,]" particularly where defendants have "already received abundant medical documentation and where instruc-

1. Pursuant to previous Orders of this Court, plaintiff has apparently disclosed all mental health records prior to the records at issue here.

2. Plaintiff conceded this point both in her moving papers and at oral argument. Plaintiff's legal claims include, *inter alia*, intentional and negli-

gent infliction of emotional distress. Because plaintiff is alleging specific psychiatric injuries and disorders, there is no question as to whether her allegations of distress are of a mere "garden variety."

tions to undergo an independent medical examination have been issued." *Id.* at 7.

Citing several cases, plaintiff elaborates on the well-established notions that psychotherapy requires confidentiality and that communications between patient and psychotherapist are privileged. *See id.* at 7–11. She maintains that no known exception to that privilege would support disclosure of ongoing treatment records from her current therapist before she places those records at issue. *See id.* at 14. Plaintiff thereby acknowledges that she may be required to disclose all of her current mental health records if she seeks to introduce or rely upon those current records at a later date, or if she relies upon conclusions reached by her psychotherapist. *See id.* at 14, 20. Plaintiff maintains that she has not yet made such an election and thus waiver is simply inapplicable to her current and ongoing mental health records. *See id.* at 15.

In further support of the motion, plaintiff initially submitted the affidavit of her counsel, Jerry V. Leaphart, Esq., in lieu of her current mental health care provider who wishes to remain anonymous. The affidavit sets forth plaintiff's doctor's position that any disclosure of plaintiff's current medical records would compromise the effectiveness of any treatment that plaintiff might receive. *See Leaphart's Affidavit in Support of Motion* at 2. The affidavit further voices the doctor's concern that plaintiff, "herself a trained lawyer, would almost certainly take a guarded view of what she could disclose to me in therapy sessions if she knows, or suspects, that her treatment records and/or her treater's impressions of them or of her are then subject to disclosure to third persons[,]" creating "an environment that is inimical to the confidential treatment modality upon which psychotherapeutic treatment is based." *Id.* at 2–3. Lastly, the affidavit reiterates that defendants have received sufficient information with which to defend this case. *See id.* at 3–5.

In response, defendants primarily argue that plaintiff is obligated to produce her current mental health records because she waived any psychotherapist-patient privilege

when she placed her mental and emotional condition at issue by seeking damages for continuing emotional distress. *See Defendants' Brief in Opposition to Motion* at 1. Defendants assert that plaintiff has failed to present any factual, legal, or medical support for the proposition that although she has placed her mental condition at issue, she need not produce her current records because it would interfere with her treatment. *See ibid.* Defendants further contend that plaintiff has misconstrued the issue by merely arguing that psychotherapist-patient communications are privileged, rather than addressing the issue of plaintiff's waiver of the privilege by placing her mental health at issue. *See id.* at 4. Defendants next cite numerous cases standing for the proposition that a plaintiff waives any doctor-patient or psychotherapist-patient privilege by placing his/her mental state at issue. *See id.* at 5–7. Noting that plaintiff has conceded that she has placed her mental and emotional condition at issue, defendants argue that she "cannot be allowed to demand money for the damage she claims the [d]efendants have done to her mental and emotional state without being required to produce the details of her psychiatric treatment." *Id.* at 7–8.

In addition, defendants point to two Orders by this Court directing plaintiff to produce her medical records or to produce legal or medical support for her position that she need not produce certain records.[3] *See id.* at 2. The December 3, 1999, Order specifically instructed plaintiff to "provide defendants with a list of all medical providers, the addresses for such providers, and the approximate date(s) of treatment. This information shall be provided for all medical treatment since the commencement of plaintiff's employment with defendant to the present." *Scheduling Order dated December 3, 1999.* Defendants contend that the instruction to produce all records "to the present" clearly encompasses plaintiff's current mental health treatment. *See Defendants' Brief* at 2. Defendants further point to a January 28, 2000, conference call with this Court, wherein plaintiff was again instructed to identify all her health care providers, past and present,

---

**3.** The Orders are dated October 4, 1999, and December 3, 1999.

and to provide releases for all her records. *See id.* at 2–3. As such, defendants maintain that plaintiff, in refusing to produce her current treatment records, has blatantly ignored the Court's instructions. *See id.* at 3.

In reply, plaintiff asserts that she has demonstrated the importance of maintaining the confidentiality of communications between herself and her treating psychotherapist, and that that constitutes the requisite "good cause" pursuant to FED.R.CIV.P. 26(c) to warrant limiting discovery of her mental health records. *See Plaintiff's Reply Brief* at 2. Plaintiff has also submitted the affidavit of her current mental health care provider but has attempted to redact the name of that provider.[4] *See id.* at Exhibit A. This new affidavit is essentially identical to the one previously submitted by Mr. Leaphart, and contains no additional information. *See ibid.*

**Discussion**

 Under Rule 26(c), a party from whom discovery is sought may move for a protective order, and "for good cause shown, the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by either preventing the discovery in toto or limiting it in some appropriate fashion. FED.R.CIV.P. 26(c). The burden of persuasion rests with the party seeking the protective order. *See Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir.1986), *cert. denied*, 484

U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987) (stating that in order to overcome the presumption of open and public disclosure and to satisfy a showing of good cause, the movant must demonstrate a particular need for protection). The *Cipollone* court emphasized that "[b]road allegations of harm, unsubstantiated by specific examples of articulated reasoning, do not satisfy the Rule 26(c) test.... Moreover, the harm must be significant, not a mere trifle." *Ibid.* The Court reviews this motion under this standard.

 It is axiomatic, and undisputed by either party, that communications between a psychotherapist and a patient in the course of diagnosis or treatment are privileged and therefore protected from compelled disclosure under Federal Rule of Evidence 501.[5] *See Jaffee v. Redmond*, 518 U.S. 1, 15, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). The United States Supreme Court in *Jaffee* expressly recognized a federal privilege for such communications, affirming that "[l]ike the spousal and attorney-client privileges, the psychotherapist-patient privilege is 'rooted in the imperative need for confidence and tug.'" *Id.* at 10, 15, 116 S.Ct. 1923. Akin to plaintiff's argument in the present motion, the *Jaffee* Court recognized the significance of confidentiality and privacy in the context of psychotherapy:

> Effective psychotherapy ... depends upon an atmosphere of confidence and trust in

---

4. This affidavit was apparently submitted in response to defendants' objection to plaintiff producing the affidavit of her own counsel rather than that of her current psychotherapist. Although plaintiff redacted the therapist's name in certain places, she inadvertently failed to redact the doctor's name on the front page of the affidavit.

To clarify the issue raised by plaintiff, the Court notes that the identity of plaintiff's health care provider and the dates of treatment constitute relevant information that is not privileged because it "does not pertain to the substance of a confidential communication." *Fox v. The Gates Corp.*, 179 F.R.D. 303, 305 (D.Colo.1998); *see also Vanderbilt v. Town of Chilmark*, 174 F.R.D. 225, 230 (D.Mass.1997) (explaining that "[f]acts regarding the very occurrence of psychotherapy, such as the dates of treatment, are not privileged."). Accordingly, plaintiff's inadvertent disclosure of her psychotherapist's name in the affidavit submitted in connection with the present

motion is of no consequence where defendants are entitled, unconditionally, to that information.

5. Federal Rule of Evidence 501 provides that "the privilege of a witness ... shall be governed by the principles of the common law as they may be interpreted by the courts of the United States.... However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness ... shall be determined in accordance with State law." Pursuant to this rule, "in federal question cases the federal common law of privileges applies." *Wm. T. Thompson Co. v. General Nutrition Corp., Inc.*, 671 F.2d 100, 103 (3d Cir.1982). In cases presenting both federal and state law claims, as in the present matter, the federal common law of privileges will govern both types of claims. *See id.* at 104 n. 5; *see also Spencer Sav. Bank v. Excell Mortgage Corp.*, 960 F.Supp. 835, 836 (D.N.J.1997).

which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears. Because of the sensitive nature of the problems for which individuals consult psychotherapists, disclosure of confidential communications made during counseling sessions may cause embarrassment or disgrace. For this reason, the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment.

*Id.* at 10, 116 S.Ct. 1923.

The Court further noted that effective and successful psychotherapy is completely dependent upon the patient's ability and willingness to talk freely. *See ibid.* (citation omitted).

In addition to recognizing that protecting confidential psychotherapist-patient communications from involuntary disclosure serves important private interests, the Supreme Court also concluded that such protection similarly serves the public interest "by facilitating the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem. The mental health of our citizenry, no less than its physical health, is a public good of transcendent importance." *Id.* at 11, 116 S.Ct. 1923. The Court further opined that "if the privilege were rejected, confidential conversations between psychotherapists and their patients would surely be chilled, particularly when it is obvious that the circumstances that give rise to the need for treatment will probably result in litigation." *Id.* at 11–12, 116 S.Ct. 1923.

Moreover, the *Jaffee* Court expressly rejected the approach by which courts "balanced" the evidentiary need for disclosure of the psychotherapist-patient communications against the patient's privacy interests. *See id.* at 7, 17, 116 S.Ct. 1923. The Supreme Court explained, "Making the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege." *Id.* at 17, 116 S.Ct. 1923. Recognizing the crucial role of predictability in this context, the Court

commented that "if the purpose of the privilege is to be served, the participants in the confidential conversation 'must be able to predict with some degree of certainty whether particular discussions will be protected. An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all.'" *Id.* at 18, 116 S.Ct. 1923 (citation omitted).

Like other testimonial privileges, the *Jaffee* Court acknowledged in a footnote that "the patient may of course waive the protection." *Id.* at 15 n. 14, 116 S.Ct. 1923. The Court did not further address waiver of the federal common law privilege, noting only that it was neither feasible nor necessary at that time to delineate the full contours of the privilege in any way that could govern future questions in this area, leaving such determinations to be made case by case. *See id.* at 18, 116 S.Ct. 1923.

Following *Jaffee*, courts have been divided as to when a waiver of the psychotherapist-patient privilege has resulted from the bringing of a lawsuit. This Court initially notes that its research has revealed no Third Circuit or New Jersey district court opinion addressing this particular issue, nor, as conceded at oral argument, has counsel for either party been successful in locating any such decision. The Court is therefore guided by two distinct views on waiver that have emerged from other federal courts. In what has become known as the broad view, courts have found waiver of the privilege where the plaintiff alleges emotional distress in his/her complaint, thereby placing his/her mental or emotional condition at issue, and seeks monetary damages for the psychological injury. *See Fritsch v. City of Chula Vista*, No. CIV.98–0972, 1999 WL 799213, at *4–5 (S.D.Cal. Sept.29, 1999). In contrast, the narrow view holds that "the psychotherapist-patient privilege is waived only when the plaintiff introduces the communications themselves as evidence." *Id.* at *6. The Court will first analyze the broad view and its progeny of cases.

The most cited authority for the broad view of waiver, *Sarko v. Penn–Del Directory Co.*, 170 F.R.D. 127, 129 (E.D.Pa.1997), arose

in the context of a plaintiff's allegation that her employer, who was aware of her clinical depression and the fact that she took medication for this condition, violated the ADA by failing to accommodate her chronic tardiness, which was caused by one of the medication's side effects—difficulty waking up in the morning. In addressing the defendant's request for disclosure of plaintiff's mental health records, the *Sarko* court found that plaintiff waived the psychotherapist-patient privilege to such records by directly placing her mental condition at issue. *See id.* at 130. As such, the court ordered plaintiff to "authorize the release of all records that contain confidential communications with her psychiatrist that are relevant to her mental condition during the time she was in [d]efendant's employ." *Ibid.*

The *Sarko* court premised its holding on three bases. *See ibid.* First, it noted that other district courts prior to *Jaffee* had recognized that a plaintiff may waive the psychotherapist-patient privilege by placing his/her mental condition at issue. *See ibid.* Second, the court noted that the privilege was analogous to that of attorney-client, which is waived when counsel's advice is placed at issue in litigation. *See ibid.* Lastly, the court agreed that "allowing a plaintiff 'to hide ... behind a claim of privilege when that condition is placed directly at issue in a case would simply be contrary to the most basic sense of fairness and justice.'" *Ibid.* (*quoting Premack v. J.C.J. Ogar, Inc.,* 148 F.R.D. 140, 145 (E.D.Pa.1993)).

A vast number of courts have also applied the broad view of waiver in similar situations. *See, e.g., Allen v. Cook County Sheriff's Dep't,* No. 97 C 3625, 1999 WL 168466, at *2 (N.D.Ill. March 17, 1999) (recognizing that "[f]undamental fairness demands that the defendants should have ample opportunity to scrutinize the basis for the opinions of [plaintiff's] therapists if she attempts to elicit therapist testimony or evidence to prove her damages caused by her alleged emotional distress."); *McKenna v. Cruz,* No. 98 CIV. 1853, 1998 WL 809533, at *2 (S.D.N.Y. Nov.19, 1998) (commenting that "a plaintiff who chooses to put his psychiatric or emotional condition in issue should be found to have waived his psychotherapist-patient privilege[,][w]hether or not there is a specific diagnosis."); *Fox v. The Gates Corp.,* 179 F.R.D. 303, 306 (D.Colo.1998) (articulating that "plaintiff has waived her psychotherapist-patient privilege with respect to any communications between her and her psychotherapist during the applicable time period as those communications may lead to the discovery of admissible evidence regarding plaintiff's present claim for emotional distress damages."); *Kerman v. City of New York,* No. 96 CIV. 7865, 1997 WL 666261, at *3 (S.D.N.Y. Oct.24, 1997) (reiterating that "by manifestly placing his mental and emotional condition at issue, plaintiff has waived the psychotherapist-patient privilege."); *EEOC v. Danka Indus., Inc.,* 990 F.Supp. 1138, 1142 (E.D.Mo.1997) (acknowledging that fairness requires waiver of the privilege and that plaintiffs "cannot rely on advice given by certain psychotherapists to support their claims while at the same time expect to keep confidential advice given by other psychotherapists that may weaken their claims."); *Lanning v. Southeastern Pennsylvania Transp. Auth.,* No. Civ.A.97–593, 1997 WL 597905, at *2 (E.D.Pa. Sept.17, 1997) (confirming that a "party waives the federal common law psychotherapist-patient privilege by placing his/her mental condition at issue[,]" and that "[r]ather than creating a 'chilling effect' ... disclosure of the information requested by defendants is required in the interest of fairness and justice."); *Price v. County of San Diego,* 165 F.R.D. 614, 622 (S.D.Cal.1996) (recognizing, pre-*Jaffee,* that "[w]here a patient-litigant has raised an issue as to his/her psychological state, the privilege will be waived."); *Topol v. Trustees of Univ. of Pennsylvania,* 160 F.R.D. 476, 477 (E.D.Pa.1995) (holding, pre-*Jaffee,* that plaintiff waived any applicable psychotherapist-patient privilege by placing her mental state in issue); *Arena v. Saphier,* 201 N.J.Super. 79, 82, 89, 492 A.2d 1020 (App.Div.1985) (holding, pre-*Jaffee,* that a "psychologist may be compelled to reveal relevant confidences of treatment when the patient tenders her mental or emotional condition in issue during the course of litigation[,]" and that "[i]n all fairness, a patient should not be permitted to

establish a claim while simultaneously fore-closing inquiry into relevant matters.").

Turning to the narrow view of waiver, *Vanderbilt v. Town of Chilmark*, 174 F.R.D. 225 (D.Mass.1997), is one of the principal cases espousing this view. In *Vanderbilt*, the plaintiff employee brought a discrimination and retaliation action against her employer seeking damages for, *inter alia*, emotional distress. *See id.* at 226. Defendants argued that in seeking damages for emotional distress, plaintiff placed her emotional state at issue and thereby waived the psychotherapist-patient privilege. *See id.* at 228. Agreeing for the sake of argument that plaintiff's mental condition was at issue, but disagreeing with defendants' position as to waiver, the court held that plaintiff "must use the privileged communication as evidence herself before she waives the privilege." *Ibid.* Recognizing that several post-*Jaffee* cases have found waiver of the privilege simply by virtue of a plaintiff placing his/her emotional or mental condition at issue, the *Vanderbilt* court set out to address the specific reasons, as initially delineated in *Sarko*, underlying such decisions. *See id.* at 228–30.

First, the *Vanderbilt* court noted that pre-*Jaffee* cases that found waiver when a plaintiff placed his/her mental condition at issue did not have *Jaffee's* "mandate against balancing the need for the evidence against the patient's interest in the privilege." *Id.* at 228. The court reasoned that *Jaffee's* rejection of the balancing test "drastically change[d] the waiver formula." *Id.* at 229. The court thus explained that when a plaintiff claims emotional injury, he/she has not explicitly waived the privilege, but has merely made his/her communication with the psychotherapist potentially relevant. *See ibid.* Such evidence may be helpful or harmful to the plaintiff's case. *See ibid.* The *Vanderbilt* court further noted that following the *Jaffee* decision, "a court cannot force disclosure of that evidence solely because it may be extremely useful to the finder of fact. Giving weight to the usefulness of the evidence as a factor in a decision regarding the scope of the privilege would be a balancing exercise that was barred by *Jaffee.*" *Ibid.* The court then explained that the *Sarko*

court may have interpreted *Jaffee* to require bright-line certainty when defining the scope of the privilege; however, *Sarko's* " 'mental-state-at-issue' " test fails to provide that certainty. *See ibid.* Indeed, the *Vanderbilt* court recognized that courts have arrived at differing conclusions as to the circumstances under which a plaintiff actually places his/her mental state at issue, thereby leaving a patient without any certainty, at the time of psychotherapy, as to whether the communications will remain privileged at a later date. *See ibid.* The court explained that "[t]his uncertainty could 'eviscerate the effectiveness of the privilege.' " *Ibid.* However, the *Vanderbilt* court failed to reconcile its position with Federal Rule of Civil Procedure 35(a), which requires an independent medical examination in situations where a plaintiff places her medical condition in issue. The burden of undergoing a defense-dictated psychiatric exam is presumably no less intrusive than disclosure of treatment records, yet no one has questioned the fairness of the "at issue" rule in this context. *See, infra,* n. 8.

Second, while the *Vanderbilt* court agreed with *Sarko's* analogy of the psychotherapist-patient privilege to that of the attorney-client, it disagreed with the result. *See Vanderbilt, supra,* 174 F.R.D. at 229. The court reiterated the well-recognized notion that the attorney-client privilege is waived if the client places the privileged communication at issue, but there is no such waiver if the client merely seeks attorney's fees. *See ibid.* Similarly, the *Vanderbilt* court reasoned that the psychotherapist-patient privilege is waived if the plaintiff places the communications between him/herself and the psychotherapist at issue, such as, for example, when a plaintiff asserts a claim that relies on the findings or advice of the psychotherapist, or if the plaintiff sues the psychotherapist for malpractice. *See ibid.* A plaintiff, however, seeking damages for emotional distress is analogous to a client seeking attorney's fees. The court explained that "[t]he fact that a privileged communication has taken place may be relevant. But, the fact that a communication has taken place does not necessarily put is (sic) content at issue." *Ibid.*

Third, the *Vanderbilt* court disagreed with *Sarko's* concern that a plaintiff should not be permitted to hide behind a claim of privilege when the plaintiff has placed his/her mental condition at issue, nor should the plaintiff be permitted to utilize the privilege as both a shield and a sword. *See id.* at 229–30. The court commented that while the plaintiff has not used the privileged communication as a sword, "[w]ere she to introduce evidence regarding the substance of her conversations with her psychotherapist in order to further her claim of emotional damage, this court would agree that she could not shield the communication from others." *Id.* at 230.

In sum, the *Vanderbilt* court held that the plaintiff could conceivably waive the privilege if she used the substance of her communications in the litigation, such as, for example, if she called her psychotherapist as a witness or if she herself testified to the substance of the communication. *See ibid.* In other words, in those situations plaintiff is placing the privileged communication itself at issue. *See ibid.*

Recently, the court in *Santelli v. Electro–Motive*, 188 F.R.D. 306 (N.D.Ill.1999), elaborated on certain fairness concerns underlying the divergent views on waiver. The court explained:

> The problem with [the] narrow waiver rule is that it would enable a party who had undergone psychotherapy to offer at trial only the testimony of a retained, non-treating expert and thereby prevent discovery of what she had told her treating psychotherapist. Among other things, this would allow the party to provide the expert with a selective "history," while preventing the veracity of that history from being tested by comparing it to what the party had reported to her treating psychotherapist. We find this result unacceptable, as it would allow the privilege holder to thwart the truth seeking process by using the privilege as both a shield and a sword. *Id.* at 308.

Discussing *Vanderbilt's* rationale, and recognizing that other courts have used predictability as a basis to support the narrow view, the *Santelli* court was unpersuaded by the notion that "patients need to know with certainty at the time of the communication whether and under what circumstances confidentiality will be maintained at a later date." *Id.* at 308–09 (*citing Vanderbilt, supra,* 174 F.R.D. at 229). The court explained that "[o]ne bright-line rule does not make the application of the privilege any more predictable than any other bright-line rule." *Id.* at 309. In other words, the court noted that an equally predictable rule would be a rule that waives the privilege by virtue of a plaintiff merely inserting a claim for emotional distress damages in a complaint. *See ibid.* With such a rule, the court observed, parties would know with certainty that they cannot seek emotional distress damages and simultaneously maintain the privilege. *See ibid.*

Recognizing that "[a] party cannot inject his/her psychological treatment, conditions, or symptoms into a case and expect to be able to prevent discovery of information relevant to those issues[,]" the *Santelli* court nonetheless found that the plaintiff had avoided waiver of the psychotherapist-patient privilege by limiting the scope of her emotional distress claim to compensation for embarrassment, humiliation, and other similar emotions. *Ibid.* Affirming the magistrate judge's decision to preclude introduction of evidence of any emotional distress that required care or treatment by a physician, the district court added that plaintiff's communications with her psychotherapist had been rendered essentially irrelevant, as plaintiff would be precluded from introducing the fact or details of her treatment, evidence through any witness about conditions or symptoms that she suffered, or evidence regarding a psychological or medical diagnosis. *See ibid.* The court thus recognized that plaintiff's testimony would be limited to her subjective feelings of humiliation, embarrassment, anger, and other similar emotions. *See ibid.* Lastly, the court opined that mere testimony of disgust or humiliation may prevent a full recovery for plaintiff's alleged emotional distress, and that she would fare better by disclosing her psychological records and alleging a broader damage claim. *See ibid.*

Another recent district court case, *Fritsch v. City of Chula Vista*, No. CIV.98–0972, 1999 WL 799213 (S.D.Cal. Sept.29, 1999),

affirmed and applied the broad view of waiver. The plaintiff in that case alleged claims for, *inter alia*, employment discrimination, an ADA violation, and severe emotional distress. *See id.* at *1. Following a discussion regarding the split authority on waiver of the psychotherapist-patient privilege, the *Fritsch* court concluded that the Supreme Court would adopt the broad view. *See id.* at *4–7. In so surmising, the court was particularly persuaded by the Supreme Court's proposed Rule of Evidence 504 on the psychotherapist-patient privilege, although Congress ultimately declined to adopt the Rule. The Supreme Court "specifically included an exception in its proposed standard that the privilege does not protect communications concerning a plaintiff's emotional condition if the patient relies upon the condition as an element of her claim."[6] *Id.* at *7. The *Fritsch* court noted that "a plaintiff who seeks to recover for emotional distress damages is relying on her emotional condition as an element of her claim." *Id.* at *8.

The California court further elaborated that in seeking to recover damages for emotional distress, the plaintiff must establish that her employer's improper conduct proximately caused the specific injury. *See ibid.* In so doing, plaintiff's "emotional health, near the time of the defendants' alleged misconduct, is an issue in the litigation[,]" particularly where plaintiff is relying on her emotional condition to make her case. *Ibid.* The court further reasoned that to ensure a fair trial, particularly on the element of causation, the defendants "should have access to evidence that Fritsch's emotional state was caused by something else.... Once Fritsch has elected to seek such damages, she cannot fairly prevent discovery into evidence relating to the element of her claim." *Ibid.*

Further explaining that it was particularly persuaded by concerns of fairness and predictability discussed in *Santelli*, the *Fritsch* court acknowledged that the narrow view of waiver does hold some merit. *See id.* at *9. The court, however, was quick to point out that it is always the plaintiff's choice to keep communications with his/her psychotherapist private by controlling the particular relief sought in the complaint. *See ibid.* Recognizing that such a choice is a difficult one, the court observed that it does permit a plaintiff to protect his/her psychotherapist communications, while at the same time allowing the defendant to test the veracity of the plaintiff's claim. *See ibid.*

Finally, the *Fritsch* court commented that "the scope of discovery into this sensitive area should be limited and confined to that information that is essential to a fair trial." *Id.* at *10. As such, the plaintiff's entire medical history would not be subject to disclosure, such as, for example, medical records relating to the birth of plaintiff's child. *See ibid.; see also Vasconcellos v. Cybex Int'l, Inc.*, 962 F.Supp. 701, 708–09 (D.Md. 1997) (recognizing that plaintiff who waived the psychotherapist-patient privilege by seeking damages for emotional distress had "a right to have discovery limited to information that is directly relevant to the lawsuit[ ]" where she "raised serious concerns that the disclosures [of her mental health records] will adversely affect her psychiatric treatment by destroying the confidentiality of her relationship with [her psychotherapist].").[7]

Having closely reviewed cases supporting both the broad and narrow views on waiver, this Court is convinced that the broad view of waiver best serves the respective interests of the parties to a lawsuit and adequately addresses fairness concerns that have plagued many courts. Indeed, at the core of most

---

**6.** The Court's proposed rule reads as follows: " 'There is no privilege under this rule as to communications relevant to an issue of the mental or emotional condition of the patient in any proceeding in which he relies upon the condition as an element of his claim or defense....' " *Id.* at *4 (*quoting* Proposed Rule of Evidence 504(d)(3)).

**7.** In *Vasconcellos,* defendants sought disclosure of any and all documents pertaining to the plaintiff's psychotherapy and meeting the following description: "medical or psychological histories; admission histories; psychological data bases; laboratory results; discharge summaries; psychological evaluations; social histories; initial clinical assessments; consultation records; treatment plans and updates; doctor and medical staff notes; telephone messages; billing and payment information; and all other similar documents." *Id.* at 707.

decisions adopting the broad view are notions of fairness and justice to each party to a lawsuit. While this Court recognizes the fundamental principle that effective psychotherapy is largely dependent on confidentiality between therapist and patient, it is similarly cognizant that a defendant against whom a claim of emotional·distress has been asserted is helpless in mounting an adequate defense without all the relevant evidentiary materials. The plaintiff's mental health records are certainly an integral and indispensable component of any such defense. Depriving a defendant of that crucial evidence, while allowing a plaintiff to seek damages for emotional distress and simultaneously seek cover under a claim of privilege " 'would simply be contrary to the most basic sense of fairness and justice[ ]' " and would essentially amount to a windfall for the plaintiff. *Sarko, supra,* 170 F.R.D. at 130 (citation omitted).

In holding that a plaintiff waives the psychotherapist-patient privilege by placing his/her mental or emotional condition at issue, this Court agrees with *Fritsch's* conclusion that the Supreme Court would in all likelihood adopt the broad view of waiver. To reiterate, the Supreme Court's proposed Rule of Evidence 504 specifically recognized that the psychotherapist-patient privilege does not protect "communications relevant to an issue of the mental or emotional condition of the patient in any proceeding in which he relies upon the condition as an element of his claim or defense." Because a plaintiff seeking to recover for intentional or negligent infliction of emotional distress must rely on his/her mental or emotional condition as an element of the claim, this Court is satisfied that the Supreme Court would embrace the broad view of waiver.

■ Significantly, the broad view of waiver not only allays concerns of fairness and justice impacting both parties to a lawsuit, but it also placates *Jaffee's* concern that the psychotherapist-patient privilege must be predictable if its purpose is to be served. Indeed, a straightforward rule that a plaintiff waives the privilege by injecting his/her mental condition into the case and placing it at issue [8] provides sufficient predictability to a plaintiff who has asserted—or intends to assert—a claim for emotional distress. *See Santelli, supra,* 188 F.R.D. at 309 (recognizing that "[o]ne bright-line rule does not make the application of the privilege any more predictable than any other bright-line rule[,]" and that an equally predictable rule is a rule that waives the privilege by virtue of a plaintiff merely inserting a claim for emotional distress damages in a complaint). Under this rule, a plaintiff who is aware of potential legal claims and brings a complaint after the completion of psychotherapy will have been

---

8. As seen in the cases analyzed, the most common way for a plaintiff to place his/her mental or emotional condition at issue is to assert an ADA violation, a claim for intentional or negligent infliction of emotional distress, or seek damages for severe emotional distress. This Court previously noted that plaintiff here is alleging more than "garden variety" emotional distress; as such, it is undisputed that she has placed her mental condition at issue for purposes of a waiver analysis.

In the analogous context of requiring a plaintiff to undergo a mental examination pursuant to Federal Rule of Civil Procedure 35(a), courts have generally found that "garden variety" emotional distress does not satisfy the rule's requirement that the plaintiff's mental condition must be "in controversy." *See, e.g., Smith v. J.I. Case Corp.,* 163 F.R.D. 229, 231 (E.D.Pa.1995) (recognizing that plaintiff's claim of embarrassment, without more, is insufficient to place his mental condition "in controversy"); *Turner v. Imperial Stores,* 161 F.R.D. 89, 97 (S.D.Cal.1995) (finding a claim of humiliation, mental anguish, and emotional distress to be a "garden variety" claim and

insufficient to warrant a mental examination); *Bridges v. Eastman Kodak Co.,* 850 F.Supp. 216, 222 (S.D.N.Y.1994) (holding that plaintiffs' assertion that their abusive work environment caused them mental suffering, together with their failure to allege a separate tort claim or that they ever suffered from psychiatric disorders, is inadequate to support a Rule 35(a) mental examination). Accordingly, this Court finds as unfounded *Vanderbilt's* concern that the broad view of waiver is unpredictable because courts differ as to the circumstances under which a plaintiff places his/her mental condition at issue. Because a "garden variety" claim of emotional distress, without more, does not place a plaintiff's mental condition at issue or "in controversy," the issue of waiver under the broad view need not be reached in that situation. Simply put, where a plaintiff merely alleges "garden variety" emotional distress and neither alleges a separate tort for the distress, any specific psychiatric injury or disorder, or unusually severe distress, that plaintiff has not placed his/her mental condition at issue to justify a waiver of the psychotherapist-patient privilege.

on notice, during the therapy, that the psychotherapist-patient privilege may be waived depending on the claims he/she ultimately asserts in the complaint. By the same token, a plaintiff who during psychotherapy has no intention of filing a lawsuit, and who subsequent to the completion of therapy decides to file a lawsuit, will have presumably benefitted from that therapy because there was no preoccupation at the time of therapy that his/her confidences may be disclosed. Even the plaintiff who has brought a lawsuit and is receiving ongoing psychotherapy, as the plaintiff in the case *sub judice,* will know with certainty that confidential communications with the psychotherapist will not remain privileged so long as he/she seeks damages for the emotional distress for which he/she is treating. Thus, as in the present case, a plaintiff seeking to recover for persevering emotional distress will be on sufficient notice that any ongoing psychotherapy related to the lingering distress will not be protected under the psychotherapist-patient privilege.

As recognized by other courts, a plaintiff in need of continuing psychotherapy will be forced to make the unenviable choice between seeking damages for his/her ongoing emotional distress and thereby waiving the privilege as to ongoing treatment, or forego recovering damages for the continuing distress. The Court is certainly not insensitive to the Hobson's choice visited upon such a plaintiff. While there are undoubtedly elements of unfairness when a plaintiff who has allegedly suffered emotional or mental harm at the hands of a defendant is forced to choose between either unfettered psychotherapy or the right to claim relief for all harm continuing into the future,[9] it would nonetheless prove more inequitable to permit a plaintiff to recover damages for a claim based upon selective disclosure, and bar a defendant from gathering the necessary evidence with which to present a defense. In the interests of justice, the broader "at issue" approach caters to both the plaintiff's and the defendant's respective interests in a lawsuit and embraces the reality that a party to a lawsuit must always choose which claims or defenses to pursue and which ones to forego, recognizing that the success of certain claims and defenses hinges on disclosure of confidential personal or financial information, as well as waiver of certain privileges.

■ Other factors strongly point to applicability of waiver under the facts of this particular case. For example, the affidavit of plaintiff's psychotherapist reveals that on April 10, 1999, plaintiff was hospitalized and diagnosed as suffering from anxiety, paranoia, depression, and hallucinations. *See Affidavit of Plaintiff's Psychotherapist* at ¶ 6. In her brief, plaintiff maintains that she "has suffered from specific diagnoses of mental and/or emotional distress from 1995 to the present. Sadly, her condition has worsened as is confirmed by the DSM references found in Plaintiff's medical records and elaborated upon in annexed affidavit." *Plaintiff's Brief* at 5. Plaintiff further contends that her worsening condition has resulted in multiple emergency hospital admissions. *See id.* at 6. The Court notes that plaintiff has manifested an unmistakable intent to inject her current symptoms and diagnoses into the underlying litigation.[10] As such, it would be a manifest injustice to permit plaintiff to utilize her more recent diagnoses, for which she is currently seeking therapy, as support for her claims of intentional and negligent infliction of emotional distress, while denying defendant any and all access to those records reflecting her current condition. Plaintiff's position that she has already provided defendants with an abundance of medical records with which to defend themselves rings hollow

9. Of course, a plaintiff is always free to simultaneously seek damages for ongoing emotional distress and continue psychotherapy, although mindful that doing so will waive the psychotherapist-patient privilege related to the continuing distress.

10. On October 25, 1999, plaintiff testified at her deposition that "I still got unfairly and wrongfully terminated and my mental distress is so heavy I am very heavily distressed and will be probably for the rest of my life having to be medicated for my hallucinations." The plaintiff could choose to cut off her claim for emotional distress damages at a defined earlier point and not seek damages going forward. In so doing, she would not be placing her current or future treatment and diagnoses at issue. *See, infra,* at 227–228.

where she seeks to deprive defendants of the very records referencing her most serious allegations of distress.

Moreover, as brought to this Court's attention by defendants' letter of March 2, 2000, plaintiff's expert, Dr. Francesca Peckman, may have had access to plaintiff's current mental health care provider or to plaintiff's current mental health records, or was given information by plaintiff as to her current treatment. Indeed, Dr. Peckman's report states that she "concur[s] with the DSM–IV (Axis I) diagnoses assigned by [plaintiff's] current mental health care professional of moderate to severe depression and post-traumatic stress disorder, moderate." *Dr. Peckman's Psychological Report* at 5. The report continues: "It is likely that [plaintiff] will need further in-patient psychiatric care in the foreseeable future, which in turn will curtail her ability to work, again as part of the *ongoing* clinical picture that has emerged following her wrongful treatment and discharge from Chubb." *Id.* at 4 (emphasis added). Plaintiff cannot have it both ways: she cannot provide her own expert access to her current treater and respective records, intending to rely on that expert's opinion, while denying that same information to defendants. Defendants must certainly be provided the opportunity to verify the diagnoses, as well as their severity and causes, particularly where, as here, plaintiff is alleging newly-diagnosed symptoms and conditions such as post-traumatic stress disorder. At oral argument, plaintiff's counsel represented to the Court that Dr. Peckman had not been given access to either plaintiff's current mental health care provider or the treatment records. Even if Dr. Peckman lacked direct access to plaintiff's current treater or the treatment records, but instead learned of plaintiff's most recent diagnoses from plaintiff, denying defendants the same access is problematic as well since plaintiff is unfettered in what she relays to her expert while defendants are provided only a selective, perhaps inaccurate, history that they cannot verify or question. Indeed, it makes the plaintiff's expert's opinion equally suspect.

■ This Court concludes that when a plaintiff places his/her current mental condi-tion at issue, by asserting other than a "garden variety" anxiety claim, the psychotherapist-patient privilege to current and ongoing mental health records is waived. Although the Court has adopted the broad view of waiver, even the narrow analysis (*Vanderbilt*) acknowledges that a plaintiff waives the psychotherapist-patient privilege when he/she uses the privileged communication as evidence and, as such, a plaintiff could not shield the privileged communication if she were "to introduce evidence regarding the substance of her conversations with her psychotherapist in order to further her claim of emotional damage...." *Vanderbilt, supra*, 174 F.R.D. at 228, 230. Here, plaintiff clearly intends to use these psychotherapist/patient communications as evidence, in furtherance of her claims of emotional distress. She has not only injected her more recent symptoms and newly-diagnosed disorders into the case through Dr. Peckman, but she has insisted on maintaining and supporting her allegations of continuing severe distress. As such, even under the narrow view, plaintiff should be compelled to disclose her current mental health records.

Plaintiff can, however, prevent disclosure of these records simply by electing to abandon her current claims of emotional distress. Limiting her distress claims to a certain period prior to her current psychotherapy will render those records irrelevant and not subject to disclosure, and will allow plaintiff to benefit from her ongoing therapy. *See Fox, supra*, 179 F.R.D. at 306–07 (stating that "[b]ecause plaintiff does not contend that her emotional distress is ongoing, but instead that the distress from [employer's] decision not to hire her ended prior to her first counseling session in 1997, the court finds that the communications between plaintiff and her psychotherapist are not relevant to plaintiff's claim for emotional distress damages" and therefore not discoverable, but cautioning plaintiff that "if she makes a claim, at some later date, that her emotional distress continued into the time period during which she sought counseling in 1997, defendant will be entitled to discovery of any records from her sessions with her psychotherapist.").

The Court notes that if plaintiff indeed chooses to limit her distress claims, she must do so immediately. Plaintiff is scheduled to undergo a psychiatric examination with defendants' expert on April 13, 2000, and that expert's report is due on May 1, 2000. In order for defendants' expert to conduct the proper examination of plaintiff, and render an accurate report, it is imperative that he know the exact symptoms and mental conditions plaintiff is alleging. As such, plaintiff's theory that she can prevent disclosure of her current mental health records until she actually places those records at issue is faulty not only because she has already done so, but because she cannot choose to disclose those records until after she has undergone an independent medical examination or after defendants' experts' reports are due. Doing so would inevitably require defendants to expend more time and money reexamining plaintiff and submitting additional reports to adequately address her current mental condition. In other words, pursuant to plaintiff's theory and the narrow view of waiver, plaintiff could essentially play defendants like a yo-yo, jerking them back and forth until she, at any stage in the litigation, feels compelled to place her records at issue. Because this Court will not permit such an injustice to the defendants, plaintiff must either disclose her current mental health records or formally limit her emotional distress claims.

In sum, this Court finds that plaintiff has not demonstrated any particularized showing of harm establishing "good cause" and necessitating a protective order, nor any reason for this Court to divert from the generally recognized broad view of waiver. As such, plaintiff's motion for a protective order is denied and plaintiff must produce the mental health records at issue forthwith. Disclosure of these records shall be limited by the Stipulation and Protective Order filed on December 29, 1999, describing the manner in which disclosure of confidential documents is to be handled. If, however, plaintiff decides to limit her emotional distress claims to a certain period of time preceding her current treatment, and thereby abandon her allegations of continuing distress, then any mental health records related to the current and ongoing distress will become irrelevant and not subject to disclosure. Should plaintiff choose to make that limitation, she must do so immediately within the time period in which disclosure is to be accomplished. An appropriate Order shall follow.