**Robert R. RUHLMANN, Plaintiff,**

v.

**ULSTER COUNTY DEPARTMENT OF SOCIAL SERVICES; Ulster County Department of Mental Health; Marshall Beckman; Ernest Townsend; Benedictine Hospital; Ruth McGregor; Joel Ginsburg, Dr.; Kevin Smith Dr.; Diana Puglisi, Dr.; and David Steres, Dr., Defendants.**

No. 99–CV–213.

United States District Court, N.D. New York.

July 6, 2000.

Chamberlain and Kaufman, Albany, New York, for plaintiff; Alan S. Kaufman of counsel.

McCabe & Mack L.L.P., Poughkeepsie, New York, for defendants Ulster County Department of Social Services, Ulster County Department of Mental Health, Marshall Beckman, and Ernest Townsend; David L. Posner of counsel.

Thuillez, Ford, Gold & Johnson, LLP, Albany, NY, for defendants Benedictine Hospital, Ruth McGregor, Dr. Joel Ginsburg, and Dr. David Steres; Debra J. Schmidt of counsel.

O'Connor, O'Connor, Mayberger & First, P.C., Albany, NY, for defendants Dr. Kevin Smith and Dr. Diana Puglisi; Christopher D. Drake of counsel.

## MEMORANDUM—DECISION and ORDER

HURD, District Judge.

### I. PROCEDURAL BACKGROUND

Plaintiff Robert R. Ruhlmann ("plaintiff" or "Ruhlmann") filed this action on February 16, 1999, alleging violations of the Fourth and Fourteenth Amendments to the United States Constitution; the Americans with Disabilities Act, 42 U.S.C. § 12101–12213 ("ADA"); and various state constitutional, statutory, and common laws. The gravamen of plaintiff's causes of action is false arrest and imprisonment. Additionally, Ruhlmann alleges that defendants Ulster County Department of Social Services, Ulster County Department of Mental Health, Marshall Beckman, and Ernest Townsend ("Townsend") (collectively the "county defendants") perceived him to be disabled and discriminated against him based upon that perceived disability, in violation of the ADA. Ruhlmann seeks damages for lost earnings, medical and other out-of-pocket expenses, deprivation of liberty, damage to reputation, and mental and emotional suffering. He further seeks reinstatement, punitive damages, and attorneys fees and costs.

Pretrial matters, including discovery, have proceeded pursuant to a Uniform Pretrial Order filed on June 4, 1999, as amended. During discovery, defendants Benedictine Hospital, Ruth McGregor ("McGregor"), and Dr. Joel Ginsburg (collectively "hospital defendants") sought plaintiff's medical and psychiatric records from 1994 to the present. Plaintiff released the records of Dr. Surjit Dinsa, his treating psychiatrist at the time of the incident, due to the possibility of calling the psychiatrist as a fact witness. Further, he did not object to the release of his medical records. Plaintiff has indicated that he has no intention to call any other mental health

professionals as witnesses.[1] Plaintiff objected to the release of any psychiatric records beyond those of Dr. Dinsa, on the grounds of privilege.

The parties briefed this discovery issue. On November 5, 1999, the United States Magistrate Judge resolved the discovery dispute by entering an Order compelling production of plaintiff's mental health records for a period of five years prior to the incident that forms the basis for this action. On November 19, 1999, plaintiff timely filed an appeal of that Order pursuant to Fed. R.Civ.P. 72(a). The hospital defendants[2] filed a brief in opposition to the appeal on January 10, 2000. On January 14, 2000, defendants Smith and Puglisi joined the hospital defendants' opposition. Plaintiff filed a reply on January 21, 2000. The appeal is on submit.

## II. *FACTS*

The following facts are gleaned from plaintiff's complaint. This brief recitation of the facts is intended solely to provide a backdrop for the discussion of the legal issues that follows, and in no way indicates that the parties have resolved any dispute as to their accuracy.

Ruhlmann was employed by the Ulster County Department of Social Services beginning in 1995. He began medical treatment for depression in the spring of 1997. In January to February 1998 he was diagnosed with bipolar mood disorder. Ruhlmann's medications were adjusted, and he took a leave from work in order to facilitate the adjustment to his new medications. Upon his return to work in March 1998 Ruhlmann alleges that various restrictions were put on him relating to his work, due to his supervisors' perception that he was disabled.

According to Ruhlmann, on March 26, 1998, Townsend, an employee of the Ulster County Department of Mental Health, contacted McGregor, an employee of Benedictine Hospital and Ulster County Department of Social Services designee, and directed her to have plaintiff arrested and involuntarily committed to the psychiatric unit of Benedictine Hospital.[3] That evening two Kingston city police officers arrested plaintiff at his home and transported him to Benedictine Hospital. He was involuntarily confined there for four days before his discharge. On the day of his discharge from Benedictine Hospital, the Ulster County Department of Social Services caused plaintiff to be served with a letter notifying him that he had been placed on involuntary paid leave of absence due to his making threats to other employees. Thereafter disciplinary charges were lodged against plaintiff. On May 19, 1998, plaintiff resigned from his position with the Ulster County Department of Social Services.

## III. *DISCUSSION*

### A. *Standard*

On an appeal from an order of a magistrate judge deciding a nondispositive matter, the district judge considers the objections made to the order and modifies or sets aside any portion of the order found to be clearly erroneous or contrary to law. Fed.R.Civ.P. 72(a). The question on this appeal is wheth-

1. Ruhlmann has indicated that he may call an expert mental health professional in order to challenge the sufficiency of the examination that prompted his involuntary admission to Benedictine Hospital.

2. Defendant Dr. David Steres was served with process after the instant appeal was filed, but prior to filing of the opposition papers. Accordingly, the collective reference to the "hospital defendants" hereinafter includes Dr. Steres as well as Benedictine Hospital, Ruth McGregor, and Dr. Joel Ginsburg.

3. Pursuant to the N.Y. Mental Hyg.Law § 9.45, the designee of a county department of social services may involuntarily admit a person for psychiatric treatment upon the report of certain specified mental health professionals that the person suffered from a mental illness for which immediate care and treatment in a hospital was needed and which was likely to result in serious harm to himself or others. Ruhlmann contends that McGregor initiated his involuntary admission to Benedictine Hospital with a form upon which she indicated that Townsend was "a licensed psychologist or certified social worker currently responsible for providing treatment services to the person" while knowing that Townsend was not qualified as "a licensed psychologist or certified social worker" as required under N.Y. Mental Hyg.Law § 9.45.

er the magistrate judge's determination that plaintiff waived the psychotherapist-patient privilege [4] by placing his mental and emotional condition in issue and by asserting a claim under the ADA was clearly erroneous or contrary to law.

## B. *ADA*

■ The question regarding the ADA claim may be disposed of. briefly. Ruhlmann's claim under the ADA is that the county defendants perceived that he was disabled, and discriminated against him based upon that perceived disability. Accordingly, the issue for trial will not be whether plaintiff was actually disabled. Rather, the issue will be what the county defendants perceived.

Furthermore, it is the hospital defendants, not the county defendants, that seek the psychiatric records in question. Notably, the county defendants did not join the hospital defendants' opposition, nor make any submission regarding this appeal. The county defendants, and certainly the hospital defendants, need not explore plaintiff's psychiatric history in order to defend against an allegation of perceived disability against the county defendants, contrary to the magistrate judge's finding. Accordingly the finding that plaintiff waived his psychotherapist-patient privilege by asserting a perceived-disability ADA claim is clearly erroneous and contrary to law. *Cf. Fritsch v. City of Chula Vista*, No. CIV. 98–0972–E–CGA, 1999 WL 799213, at *5 n. 1 (S.D.Cal. Sept. 29, 1999) (noting that where perceived disability is claimed, case law finding allegation of actual disability puts mental condition in issue is not applicable); *Sarko v. Penn–Del Directory Co.*, 170 F.R.D. 127, 130 (E.D.Pa.1997) (quoting the three protected categories defined in the ADA and finding that plaintiff placed her mental condition at issue "at least with respect to the first two protected categories"

that relate to actual disability; the third protected category relates to perceived disability).

## C. *Psychotherapist-patient Privilege*

The more difficult analysis pertains to waiver of plaintiff's psychotherapist-patient privilege by putting his emotional condition at issue. The parties concur that the federal common law psychotherapist-patient privilege protects plaintiff's psychiatric records to the extent that he has not waived that privilege. However, the hospital defendants contend that by seeking emotional distress damages, Ruhlmann put his emotional condition at issue and therefore waived the psychotherapist-patient privilege. Ruhlmann argues that he has not put his emotional condition at issue merely by seeking emotional distress damages, without more.

Two lines of cases have developed regarding waiver of the psychotherapist-patient privilege since its recognition in *Jaffee*. There is no Second Circuit authority on the issue.[5]

One line of cases, advanced by the plaintiff, takes a narrow view and only finds waiver where the party asserting the privilege has affirmatively used his or her mental condition. *See, e.g., Booker v. City of Boston*, Nos. 97–CV–12534–MEL, 97–CV–12675–MEL, 1999 WL 734644, at *1 (D.Mass. Sept. 10, 1999) ("privilege is not waived unless the plaintiff makes positive use of the privileged material in the prosecution of her case"); *Santelli v. Electro–Motive*, 188 F.R.D. 306, 309 (N.D.Ill.1999) (finding no waiver where claim limited "to the negative emotions that [plaintiff] experienced essentially as the intrinsic result of the defendants' alleged conduct"); *Brown v. Telerep, Inc.*, 263 A.D.2d 378, 379, 693 N.Y.S.2d 34 (1999) (finding plaintiff's mental condition no longer at issue where defamation and intentional infliction of

---

**4.** In *Jaffee v. Redmond*, 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996), the Supreme Court held that there is a federal common law privilege that protects psychotherapist-patient communications from compelled disclosure. The *Jaffee* Court noted that, as with other testimonial privileges, the psychotherapist-patient privilege may be waived by the patient. *Id.* at 15 n. 14, 116 S.Ct. 1923.

**5.** Pre–*Jaffee* authority determining waiver is inapposite because of the use of a balancing test, which was rejected by *Jaffee*, 518 U.S. at 17, 116 S.Ct. 1923. *See, e.g., United States v. Diamond*, 964 F.2d 1325, 1328–29 (2d Cir.1992) (recognizing that the psychotherapist-patient privilege exists, but employing a balancing test to determine if certain records protected by privilege).

emotional distress claims are withdrawn and all references to the employer's statement about plaintiff's mental stability are removed); *Allen v. Cook County Sheriff's Dep't,* No. 97 C 3625, 1999 WL 168466, at *2 (N.D.Ill. Mar. 17, 1999) (finding that plaintiff has not put her state of mind at issue where she did not place the "actual substance of her communications at issue"); *Hucko v. City of Oak Forest,* 185 F.R.D. 526, 527 (N.D.Ill. 1999) (finding no waiver of privilege where plaintiff merely seeks damages for emotional harm resulting from defendants' misconduct); *Vann v. Lone Star Steakhouse & Saloon,* 967 F.Supp. 346, 347–48, 350 (C.D.Ill.1997) (finding waiver where plaintiff claimed physical and emotional injury caused by a hostile work environment and disclosing her treating psychotherapist as an expert witness); *Vasconcellos v. Cybex Int'l, Inc.,* 962 F.Supp. 701, 708–09 (D.Md.1997) (finding waiver where plaintiff claimed severe emotional distress resulting from harassment and brought intentional infliction of emotional distress claim); *Sarko,* 170 F.R.D. at 129–30 (plaintiff who brought ADA claim based upon her clinical depression requiring medication put her mental condition at issue).

On the other hand, the hospital defendants urge the court to follow those courts that purport to have adopted a broad view of waiver. Under the purported broad view, seeking emotional distress damages is sufficient to bring emotional condition into issue, opening the door for discovery into psychiatric records. *See, e.g., Jackson v. Chubb Corp.,* 193 F.R.D. 216, 225–26 (D.N.J.2000); *McKenna v. Cruz,* No. 98 CIV. 1853 (H BHBP), 1998 WL 809533, at *2–3 (S.D.N.Y. Nov. 19, 1998); *Fox v. Gates Corp.,* 179 F.R.D. 303, 306 (D.Colo.1998); *EEOC v. Danka Indus., Inc.,* 990 F.Supp. 1138, 1142 (E.D.Mo.1997); *Lanning v. Southeastern PA Transp. Auth.,* Nos. Civ. A. 97–593, Civ. A. 97–1161, 1997 WL 597905, at *2 (E.D.Pa. Sept. 17, 1997); *Doolittle v. Ruffo,* No. 88–CV–1175, 1997 WL 151799, at *2 (N.D.N.Y. Mar. 31, 1997).

A close reading, however, reveals that many of the cases espousing the broad view distinguish between cases in which significant emotional harm is alleged or the mental condition is at the heart of the litigation, and a claim for "garden-variety" [6] emotional distress damages. For example, in *Jackson,* the plaintiff alleged "anxiety, paranoia, depression, and hallucinations," as well as posttraumatic stress disorder, as a result of defendants' race discrimination. 193 F.R.D. at 226–27. She also brought claims for intentional and negligent infliction of emotional distress, and intended to use records of her current therapy in support of those claims. *Id.* at 226–27. The court, adopting the broad view of waiver after reviewing the pertinent case law, found that plaintiff had placed her mental condition in issue and therefore waived the psychotherapist-patient privilege. *Id.* at 220–28.

In *McKenna,* the plaintiff alleged " 'serious and possibly permanent emotional injuries [and] grievous mental and emotional distress.' " 1998 WL 809533, at *1 (quoting plaintiff's complaint). Additionally, plaintiff's psychiatrist had diagnosed him with posttraumatic stress syndrome, resulting from the alleged false arrest and excessive force by defendants. *Id.* The *McKenna* Court rejected plaintiff's assertion that he claimed only garden-variety emotional distress, and held that McKenna had waived the psychologist-patient privilege. *Id.* at *2–3.

Similarly, in *Doolittle,* the plaintiff alleged "debilitating depression/amity [sic] adjustment reaction" caused by defendants' conduct. 1997 WL 151799, at *2. The plaintiff alleged that the defendants' conduct caused a mental breakdown preventing her return to work, and further expressed her intent to call her psychotherapist as an expert witness at trial. *Id.* at *2–3. Thus, a broad view finding waiver whenever emotional distress damages are sought actually excludes those cases in which merely incidental, or "garden-variety," emotional distress is alleged, with-

---

**6.** "Garden-variety" means ordinary or commonplace. Webster's New World Dictionary 656 (3d College ed.1988). Garden-variety emotional distress, therefore, is ordinary or commonplace emotional distress. Garden-variety emotional distress is that which simple or usual. In contrast, emotional distress that is not garden-variety may be complex, such as that resulting in a specific psychiatric disorder, or may be unusual, such as to disable one from working.

out more. *See Jackson,* 193 F.R.D. at 226 n. 8 (noting that "a 'garden variety' claim of emotional distress, without more, does not place a plaintiff's mental condition at issue or 'in controversy' "); *Wynne v. Loyola Univ. of Chicago,* No. 97 C 06417, 1999 WL 759401, at *1 (N.D.Ill. Sept. 3, 1999) (finding plaintiff waived the privilege where "the exact parameters of [her] condition are at the very heart" of her ADA case alleging disability due to major depression); *Holtz v. Wildenstein & Co.,* 261 A.D.2d 336, 336, 693 N.Y.S.2d 516 (1999) (finding waiver of the privilege where plaintiff claimed an assault and battery by her supervisor resulting in "psychological fears, stress and depression"); *Kirchner v. Mitsui & Co.,* 184 F.R.D. 124, 128 & n. 9 (M.D.Tenn. 1998) (finding that plaintiff raised the issue of her mental condition by seeking damages for emotional distress and noting that plaintiff brought a claim against an individual defendant for intentional infliction of emotional distress); *Sidor v. Reno,* No. 95 Civ. 9588(KMW), 1998 WL 164823, at *2 (S.D.N.Y. Apr. 7, 1998) (indicating that where a claim for emotional distress is not a "garden variety" claim, privilege is waived, despite rejecting the narrow view of waiver). *But see Fox,* 179 F.R.D. at 306 (finding waiver of privilege when emotional distress damages sought, regardless of whether treating psychotherapist would testify); *Danka Indus., Inc.,* 990 F.Supp. at 1142 (finding waiver where emotional distress damages sought); *Lanning,* 1997 WL 597905, at *2 (finding mental condition at issue, and waiver, where plaintiff claims emotional distress, despite plaintiff's attempts to limit such damages and indication that no expert would testify regarding emotional distress).

Reviewing the circumstances under which other courts have applied a waiver of privilege, although not explicitly selecting a broad or narrow view, is also instructive. In *Speaker v. County of San Bernardino,* 82 F.Supp.2d 1105 (C.D.Cal.2000), the defendant law enforcement officer asserted the privilege to protect the confidentiality of communications that occurred in the aftermath of an incident during which he shot and killed plaintiff's decedent. As an affirmative defense, defendant asserted that his perception of the incident was distorted. *Id.* at 1118.

The court found that use of his distorted perception as a defense, and submitting an expert report regarding the distorted perception, placed his mental condition at issue. *Id.* at 1120. However, the court found that the defendant did not allege any facts pertaining to any issues other than perception distortion. *Id.* Accordingly, the court permitted discovery, limited to communications regarding perception distortion. *Id.*

In *Vanderbilt v. Town of Chilmark,* 174 F.R.D. 225 (D.Mass.1997), the plaintiff brought claims for employment discrimination and retaliation, and sought, inter alia, damages for emotional distress. In analogizing with attorney client privilege in the context of a malpractice claim, the *Vanderbilt* Court stated, "A patient whose cause of action relies on the advice or findings of her psychotherapist cannot claim the privilege." *See id.* at 229. The court also agreed with the premise set forth in *Sarko,* 170 F.R.D. at 130, that a party should not be permitted to use the privilege as a sword, by placing mental condition at issue in the litigation, and concurrently as a shield, by seeking the protection of the privilege. *Vanderbilt,* 174 F.R.D. at 229–230. However, the *Vanderbilt* Court found that because plaintiff had not attempted to introduce the substance of the communications to her psychotherapist into the litigation, she was "not using the privileged communication as a sword." *Id.* at 230. Thus, the *Vanderbilt* Court determined that merely seeking emotional distress damages was insufficient to place plaintiff's mental condition at issue. *Id.* at 229–30.

■ Consequently, a party does not put his or her emotional condition in issue by merely seeking incidental, "garden-variety," emotional distress damages, without more. Further determination about the circumstances in which the plaintiff has put his emotional condition in issue is unnecessary in this case, as Ruhlmann merely seeks damages for emotional distress incidental to the alleged misconduct of defendants. This finding follows the determination made by the United States Supreme Court that the parameters of the psychotherapist-patient privilege must be defined "on a case-by-case basis." *Jaffee,* 518 U.S. at 18, 116 S.Ct. 1923.

Moreover, a finding that seeking incidental emotional distress damages places mental condition at issue, requiring a plaintiff to disclose psychotherapist communications would be inconsistent with the purpose of the psychotherapist-patient privilege. The psychotherapist-patient privilege, like the spousal and attorney client privileges, is " 'rooted in the imperative need for confidence and trust.' " *Id.* at 10, 116 S.Ct. 1923 (quoting *Trammel v. United States,* 445 U.S. 40, 51, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980)). Accordingly, the privilege promotes the important private interest in successful psychiatric treatment. *Id.* at 10–11, 116 S.Ct. 1923. Further, "[t]he psychotherapist privilege serves the public interest by facilitating the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem .... a public good of transcendent importance." *Id.* at 11, 116 S.Ct. 1923. To condition recovery for emotional distress incidental to the violation of federal constitutional and statutory rights upon the surrender of the protection of the psychotherapist privilege is also antithetical to the purpose of the laws that provide redress for such violations.

The finding that plaintiff placed his mental and emotional condition at issue by seeking incidental emotional distress damages, thereby waiving the psychotherapist-patient privilege is clearly erroneous and contrary to law.

## IV. CONCLUSION

Ruhlmann has not waived the psychotherapist-patient privilege by alleging perceived-disability violation of the ADA. Further, he has not placed his mental condition at issue, and has not waived the psychotherapist-patient privilege, by seeking emotional distress damages incidental to federal constitutional and statutory law violations.

Accordingly, it is

ORDERED that Plaintiff's appeal of the Magistrate Judge's Order filed on November 5, 1999, is GRANTED and the Order is VACATED.

IT IS SO ORDERED.