Paulette GREEN, Plaintiff

v.

ST. VINCENT'S MEDICAL CENTER, Defendant.

Civil No. 3:06–CV–01916 (CFD).

United States District Court, D. Connecticut.

Sept. 15, 2008.

Bruce P. Matzkin, Branford, CT, for Plaintiff.

Andrea K. Hallier, Patricia E. Reilly, Littler Mendelson, North Haven, CT, for Defendant.

### RULING ON DEFENDANT'S MOTION TO COMPEL

THOMAS P. SMITH, United States Magistrate Judge.

Pending before the court is defendant's motion to compel discovery. (Dkt. # 18). For the reasons set forth below, defendant's motion to compel is **GRANTED.** The defendant's request for an award of reasonable

expenses incurred in making this motion, pursuant to Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure is **DENIED,** without prejudice to its renewal on conclusion of this case.

## I. Background

This action involves allegations of violations of the Connecticut Fair Employment Practices Act, Conn. Gen.Stat. § 46a–60 (a)(1), and Title VII of the Civil Rights Act of 1964, § 701, 42 U.S.C. § 2000e et seq., and separate counts for both negligent and intentional infliction of emotional distress. (Compl.) The plaintiff, Paulette Green, is a former employee of the defendant, St. Vincent's Medical Center ("St. Vincent's"). The plaintiff was employed by the defendant as a certified nurse assistant from May 2002 until July 2004. (Compl., Count One ¶ 1, Answer, Count One ¶ 1). Plaintiff was suspended on July 12, 2004 along with Milton Green, another employee of St. Vincent's, pending an investigation into an altercation that occurred between plaintiff and Mr. Green on or about July 11, 2004. (Compl., Count One ¶ 3, Answer, Count One ¶ 3).

Under the plaintiff's description of events, the confrontation escalated to the point that it led to the intervention of their superiors at St. Vincent's and, ultimately, their suspension. The plaintiff claims, over the defendant's denial, that at a meeting on July 13, 2004, one or more of her managers at St. Vincent's requested that she memorialize her version of the events surrounding the confrontation between her and Mr. Green in a letter. At this time, according to the plaintiff, she also reported a pattern of sexually harassing conduct that Mr. Green had allegedly subjected her to over the course of her employment, which her managers also requested that she describe in her letter. According to the plaintiff, upon her submission of this letter her managers "verbally attacked [her] for having written about Mr. Green's harassment of her" telling her that she "should be ashamed for placing these accusations on paper" and accusing her of lying. (Compl., Count One ¶ 5).

Plaintiff claims that the defendant failed to take reasonable steps to protect her from Mr. Green's supposed "propensity for harassing conduct" despite having knowledge of such propensity (Compl., Count One ¶ 6), and that the defendant's approach to this situation, including suspending her and accusing her of lying, amounted to constructive discharge and violation of her civil rights under the aforementioned statutes. As a result, the plaintiff alleges that she has suffered damages, including lost wages and "severe emotional distress." (Compl. Counts One–Four). While acknowledging that there was an altercation between the plaintiff and Mr. Green that resulted in her suspension, the defendant largely denies the accuracy of the plaintiff's account. (Answer at 1–2). Additionally, defendant has raised several affirmative defenses, including the claim that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and that plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the defendant. (See Answer at 3).

Defendant seeks an order compelling the plaintiff to provide signed authorization forms to release her medical and psychiatric records. (See Pl.'s Mot. to Compel (Dkt.# 18)). Interrogatory Number 10 of defendant's first set of interrogatories requests that plaintiff "Identify every social worker, mental health professional, and other counselors ... of any sort, with whom you consulted or who treated you at any time up to and including the present...." (See Def.'s First Set of Interrogs. And Req. For Produc.). Defendant's Request for Production Number 13 requests "Authorizations in the form attached hereto to obtain all records concerning you from [those] individuals, institutions or entities listed in response...." (*Id.*) In response to Interrogatory Number 10, the plaintiff answered that there were none, as she "did not have insurance and could not afford such treatment." (See Resps. to Def.'s First Set of Interrogs. and Req. for Produc.). In response to Request for Production Number 13, the plaintiff responded that the authorization forms were not attached, and that she objected to providing such authorization. (*Id.*).

Plaintiff's subsequent deposition testimony stands in apparent conflict with her responses to defendant's discovery requests.[1] Defendant identifies several references in the plaintiff's testimony to psychiatric and medical treatment the plaintiff has received, largely, though not exclusively, in connection with severe abuse that she purportedly suffered from 1996–1999 at the hands of her ex-husband. Plaintiff testified that she received counseling at a domestic violence center for over a year in 1998–1999 in connection with this abuse, and that she received approximately six months of one-on-one counseling from Westport, Connecticut therapist David Avila in 1999. (Pl.'s Dep. 103–04). In addition, plaintiff stated that she received treatment from New York physician Angelo Gelpie for a wound suffered when her husband shot her in the thigh. (Id. at 100–01). During her deposition, plaintiff also identified a forensic report, prepared by a doctor at the Center for Battered Women, detailing some of the injuries that resulted from her ex-husband's purported abuse. (Id. at 101). Despite repeated attempts by the defendant to secure authorization for the plaintiff's medical and psychiatric records without court intervention, such authorization has not to date been provided.

## II. Discussion

Parties may obtain discovery regarding any non-privileged matter that is relevant to the subject matter involved in the pending litigation. Fed.R.Civ.P. 26(b)(1). The information sought does not need to be admissible at trial; it need only be reasonably calculated to lead to the discovery of admissible evidence. Id. "Relevance" under Federal Rules of Civil Procedure 26(b)(1) has been defined broadly to include "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). The party resisting discovery bears the burden of showing why a discovery request should be denied. Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir.1975).

### A. The Psychotherapist–Patient Privilege & Waiver Principles

■ Courts have long recognized that certain communications and documents may be protected from discovery by the psychotherapist-patient privilege, described by the United States Supreme Court in Jaffee v. Redmond, 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). The privilege covers confidential communications made to licensed psychiatrists, psychologists, and social workers in the course of psychotherapy. Id. at 15, 116 S.Ct. 1923. The Jaffee court noted that the privilege is "rooted in the imperative need for confidence and trust" in the psychotherapist-patient relationship, and is designed to avoid deterring people from seeking treatment for fear that they will suffer a disadvantage in later litigation.[2] Id. at 10–11, 116 S.Ct. 1923.

■ While firmly established, the psychotherapist-patient privilege may be waived. Id. at 15, n. 14, 116 S.Ct. 1923. District Courts of the Second Circuit have long recognized that the protection of the psychotherapist-patient privilege is waived when a plaintiff puts his or her mental condition at issue in the case. See Williams v. Gillette, No. 3:02CV2213 (WWE), 2004 WL 717173 at *1 (D.Conn., March 24, 2004); Alden v. Time Warner, Inc., No. 94 CV 6109(JFK), 1995 WL 679238 at *3 (S.D.N.Y., Nov.14, 1995). Such involuntary waiver is rooted in basic

1. There is some dispute as to whether the plaintiff's response to these requests was intentionally misleading, or simply a misunderstanding of the nature of the question. Though the plaintiff has indeed received psychiatric treatment in her life, her claim that she interpreted Interrogatory Number 10 as a limited inquiry into whether she had received such treatment in connection with the events surrounding Mr. Green's alleged harassment and her departure from St. Vincent's is not incredible given the phrasing of both that interrogatory and her response. Regardless, it is now clear that Interrogatory Number 10 was designed to elicit information on any such treatment the plaintiff had received throughout her life.

2. The court pointed out that the privilege also serves public ends, as "[t]he mental health of our citizenry, no less than its physical health, is a public good of transcendent importance." Id. at 11, 116 S.Ct. 1923.

principles of fairness in litigation. *See John Doe Co. v. United States,* 350 F.3d 299, 302 (2d Cir.2003) ("It is well established doctrine that in certain circumstances a party's assertion of factual claims can, out of considerations of fairness to the party's adversary, result in the involuntary forfeiture of privileges for matters pertinent to the claims asserted...."). Along those lines, courts have recognized that when a party puts his or her mental state at issue, his or her opponent has a right to conduct an inquiry into present *and* past communications between psychotherapist and patient. *See Sidor v. Reno,* No. 95 Civ. 9588(KMW), 1998 WL 164823 at *2 (S.D.N.Y. April 7, 1998). Such inquiry enables defense counsel to attempt to show that a plaintiff's emotional distress was caused at least in part by events and circumstances other than those at issue in the immediate case. *See id.*

Whether a plaintiff has put his or her mental or emotional condition at issue is therefore the threshold determination when determining whether the psychotherapist-patient privilege has been waived. Some courts have held that a plaintiff places his or her mental condition at issue when he or she asserts "a claim for intentional or negligent infliction of emotional distress, or seek[s] damages for severe emotional distress." *See Jackson v. Chubb Corp.,* 193 F.R.D. 216, 225 n. 8 (D.N.J., 2000); *see also Doe v. Oberweis Dairy,* 456 F.3d 704, 718 (7th Cir.2006) ("If a plaintiff *by seeking damages for emotional distress* places his or her psychological state in issue, the defendant is entitled to discover any records of that state." (emphasis added)).

▮▮▮ Under Connecticut Law, proving a claim of intentional infliction of emotional distress requires proof that a plaintiff's emotional distress was severe, and such determination may stand despite the absence of evidence of medical or other treatment. *See Berry v. Loiseau,* 223 Conn. 786, 808–811, 614 A.2d 414 (1992); *See also Almonte v. Coca–Cola Bottling Co.,* 959 F.Supp. 569, 575 (D.Conn.1997) (" "[E]xtreme and outrageous" conduct has been defined as that which ...

'is especially calculated to cause, and does cause, mental distress of a very serious kind.' "). Ordinarily, defendants are allowed to present evidence of alternative explanations for a plaintiff's distress, or its severity, in defense of such a claim. *See Sidor,* 1998 WL 164823 at *2.

There is a developing line of decisions, in this and other circuits, that restrict waiver to cases involving more than mere "garden variety" emotional distress. *See, e.g., Ruhlmann v. Ulster County Dept. of Social Services,* 194 F.R.D. 445, 449 n. 6 (N.D.N.Y.2000) ("Claims of emotional distress that are 'garden variety' are 'simple or usual.' "); *Kunstler v. City of N.Y.,* 242 F.R.D. 261, 264 (S.D.N.Y.2007) ("[A] party does not put his or her emotional condition in issue by merely seeking incidental, 'garden variety,' emotional distress damages.") These cases provide little guidance for characterizing a claim as "garden variety." *See Greenberg v. Smolka,* No. 03 Civ. 8572 RWS MHD, 2006 WL 1116521 at *5 (S.D.N.Y. April 27, 2006) ("In these cases the courts have not developed a consistent approach to whether and when waiver is properly inferred....").

In *In Re: Sims,* 534 F.3d 117 (2d Cir. 2008), a mandamus proceeding, the court resolved the conflicting case law in the circuit on the issue of whether a plaintiff has put his or her mental state in issue.[3] In its review of the district court's finding that the plaintiff had waived the privilege, the Second Circuit found that the plaintiff had not brought independent claims for emotional distress damages, that defense counsel's claim that the plaintiff had put his mental state in issue was primarily based on the plaintiff's deposition testimony, and that the plaintiff's attorney had specifically and explicitly informed that court that plaintiff did not intend to pursue any claims beyond "garden variety" emotional distress. *Id.* at 134–41. The court concluded that the plaintiff had not put his mental or emotional state in issue, and had therefore not waived the psychotherapist-patient privilege, explaining that

---

**3.** As is required before a court can conduct mandamus review of discovery orders that involve privilege, the court found that "immediate reso-lution will avoid the development of discovery practices or doctrine undermining the privilege." *Sims,* 534 F.3d at 129.

In light of the transcendent importance of the psychotherapist-patient privilege ... a plaintiff does not forfeit his psychotherapist privilege merely by asserting a claim for injuries that do not include emotional damage; that a plaintiff does not forfeit the privilege by merely stating that he suffers from a condition such as depression or anxiety for which he does not seek damages; that a plaintiff may withdraw or formally abandon all claims for emotional distress in order to avoid forfeiting his psychotherapist-patient privilege; and that a party's psychotherapist-patient privilege is not overcome when his mental state is put in issue by another party.

*Id.* at 134.

### B. Defendant's Motion to Compel (Dkt. # 18)

■ Defendant seeks an order compelling plaintiff to produce her medical and psychiatric records, as well as a forensic report describing injuries she purportedly suffered at the hands of her ex-husband. Plaintiff responds that she should not be compelled to provide such authorization, relying on the psychotherapist-patient privilege recognized in *Jaffee*, 518 U.S. at 1, 116 S.Ct. 1923. Defendant does not dispute that the records it seeks would, absent waiver, fall within the ambit of the psychotherapist-patient privilege. Likewise, plaintiff does not dispute that the privilege is waived when it is determined that a plaintiff's mental or emotional condition is at issue in this case. The inquiry before this court then, is whether the plaintiff has in fact put her mental or emotional state at issue in this case. According to the defendant, by pleading separate causes of action for emotional distress and seeking damages for emotional distress, plaintiff has put her mental state in issue, thereby waiving that privilege. Plaintiff responds that her emotional distress claims are "garden variety" and hence do not place her mental or emotional state at issue in this case. As explained below, the court finds that the plaintiff has put her emotional state at issue,

and that the defendant has a right to production of the plaintiff's medical and psychiatric records.

Despite *Sims*, there remains broad disagreement between courts, and the parties here, as to what constitutes a mere "garden variety" emotional distress claim. Without attempting to exhaustively define the meaning of the term in this context, the court finds that the plaintiff's claims here rise to a level where waiver of the privilege is appropriate. This court agrees with the view that the plaintiff has placed her mental or emotional state in issue by asserting claims for both negligent and intentional infliction of emotional distress, and by seeking damages for severe emotional distress. *See Jackson*, 193 F.R.D. at 225 n. 8. Though the plaintiff now seeks to avoid production of these records by narrowing the scope of her complaint through explanation and qualification in response memoranda, plaintiff's counsel himself points out that "[i]t is the Complaint that defines the claims." Defendant's conclusion that the plaintiff intends to put her mental or emotional state at issue in this case is a reasonable interpretation within the four corners of the complaint and the plaintiff's interrogatory responses. Furthermore, the plaintiff's pursuit of her claims for intentional and negligent infliction of emotional distress will necessarily require proof that her emotional distress was severe. *See Almonte*, 959 F.Supp. at 575. "Defense counsel has a right to inquire into plaintiffs' pasts for the purpose of showing that their emotional distress was caused at least in part by events and circumstances that were not job related." *Sidor*, 1998 WL 164823 at *2. This court's conclusion that the plaintiff has put her mental or emotional state at issue comports with the Second Circuit's reasoning in *Sims*, 534 F.3d at 134, as it is rooted in her assertion of separate claims for emotional distress and her pursuit of damages for emotional distress, and not in her deposition testimony describing unrelated trauma and mental suffering.[4]

---

**4.** Pursuant to the reasoning in *Sims*, 534 F.3d at 134, plaintiff's withdrawal or formal abandonment of all claims for anything beyond "garden variety" emotional distress, along with explicit

assurance that the plaintiff does not intend to put her mental or emotional state at issue in this case conceivably could serve to avoid waiver of the psychotherapist-patient privilege in this case.

This court is aware of the plaintiff's privacy rights, and cognizant of the importance of the psychotherapist-patient privilege, designed to encourage free and full communication between a patient and his or her therapist. *See Oberweis Dairy*, 456 F.3d at 718. However, the court's duty is to ensure that basic principles of fairness in litigation are observed.

### C. Defendant's Motion for Payment of Expenses

Defendant also requests that the court award the reasonable expenses incurred in making this motion, including attorney's fees, pursuant to Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure. Such an award is presumptively mandatory under Rule 37. However, if any of three listed exceptions are met, the court should not grant such an award. At the conclusion of all proceedings in this case, on application, the court will consider the amount of attorney's fees, if any, that should be awarded in this case.

### III. Conclusion

Accordingly, defendant's motion to compel (dkt. # 18) is **GRANTED.** Defendant's motion for reasonable expenses incurred in making this motion is **DENIED,** without prejudice to its renewal on conclusion of this case. Plaintiff is **ORDERED** to (1) provide authorizations to release her medical and psychiatric records and (2) produce the forensic report that documents the injuries she allegedly sustained as a result of her ex-husband's abuse.

This is not a recommended ruling. This is a discovery ruling and order reviewable pursuant to the "clearly erroneous" standard of review. 28 U.S.C. § 636(b)(1)(A); Fed. R.Civ.P. 6(a), (e) and 72(a); and Rule 2 of the Local Rules for U.S. Magistrate Judges. As such, it is an order of the court. *See* 28 U.S.C. § 636(b) (written objections to ruling must be filed within ten days after service of the same).

**IT IS SO ORDERED.**

